## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### ELMOE V. COMMONWEALTH.

January 19, 1922.

Absent, Saunders, J.

1. HOMICIDE—*Evidence—Recent Possession of Property of Decedent —Case at Bar.*—Upon a prosecution for murder, where deceased and accused were strangers, and the fact of the murder was clearly established, and accused gave a false account of how he obtained possession of property known to have been on the person of deceased, the following instruction, while it might have been more explicit, could not have misled the jury: "While the exclusive possession of stolen goods, which were in the possession of the deceased at the time of his death is, of itself, not even *prima facie* evidence of the murder of the deceased by the party so in possession of such goods, yet such possession is a most material circumstance to be considered by the jury, and where, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account of how he came by the goods, such proof, if they believed from the evidence it has been so proven, will warrant a conviction of murder. In other words, there should be some evidence of guilty conduct, besides the bare possession of the stolen property, before the presumption of murder is superadded to that of larceny, but extrinsic facts and circumstances may constitute such additional evidence. But it is for the jury, under all the circumstances of the case, to determine the value of such refusal, or false account, as evidence."

2. MURDER—*Recent Possession—Evidence Sufficient to Sustain Conviction.*—In a prosecution for homicide, where it appeared from the evidence that the deceased and the accused were strangers to each other, and the fact of murder was clearly established, and the accused on the day after the murder was found in possession of personal property which was known to have been on the person of the deceased at the time of the murder, and the accused gave a false account of how he obtained such pos-

session, the evidence is sufficient to sustain a conviction of murder.

3. HOMICIDE—*Recent Possession—Burden of Proof.*—There are expressions in some of the cases relating to "recent possession" to the effect that such possession raises a *prima facie* presumption of the guilt of the accused, and that the burden is on the accused to overcome such presumption. It would be more accurate to say that it is a matter of evidence to be considered by the jury, along with other evidence, in determining the guilt or innocence of the accused. The burden is on the Commonwealth to establish the guilt of the accused beyond reasonable doubt, and this burden continues throughout the trial and never shifts.

4. HOMICIDE—*Reasonable Doubt—Recent Possession.*—If, upon the whole evidence in the case, including "recent possession," a reasonable doubt remains in the minds of the jurors as to the guilt of the accused, he is entitled to the benefit of that doubt.

5. HOMICIDE—*Instructions—Conflict in Instructions as to Recent Possession and the Presumption of Innocence.*—The instruction set out in the first syllabus upon "recent possession" was held not to be in conflict with the other instructions given by the court that the accused is presumed to be innocent and that his guilt must be established beyond a reasonable doubt.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond.

*Affirmed.*

The opinion states the case.

*Thos. I. Talley* and *Geo. L. Oliver,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The plaintiff in error, hereinafter called the accused, was convicted of murder of the first degree, and sentenced to be electrocuted. He assigns two errors to rulings of the trial court: First, the granting of an instruction on the motion

of the Commonwealth; and, second, the refusal of the trial court to set aside the verdict of the jury on the ground that it was contrary to the law and the evidence. Both assignments are without merit.

The deceased and his brother kept a store at Tobacco, in Brunswick county. About 8:45 o'clock P. M., on August 1, 1921, the deceased, after eating supper at the house of his brother, left the latter's house to go to the store where he usually lodged at night. About 6:30 o'clock on the morning of August 2, 1921, his dead body was found about one hundred yards from the store. "The face of the deceased was smashed in by a blow from some heavy instrument, and the back part of his skull was also crushed by some heavy instrument, which two blows caused instant death, according to the physician who examined deceased's body." The store was found to have been broken open that night, and a number of articles had been taken therefrom, including five razors, several pairs of shoes and a number of men's garters, a number of men's sleeve holders, and several other articles. "When the deceased left his brother's home he had on him a pistol in a leather holster, which leather holster had been made by the deceased's brother. This pistol had been purchased by deceased's brother about nine years ago and the deceased's brother had put inside of each side of the butt certain numbers and certain letters with some sharp instrument. These marks could not have been seen unless the rubber stock was unscrewed. The deceased's brother had also kept the tag that came off this pistol at the time he purchased it, on which he had put the same numbers that he put inside of the butt of the pistol. The tag also had the serial number put on at factory. At the trial, upon examination of the butt of the pistol after taking same apart, these numbers corresponded exactly with the numbers that Mr. Elmore's brother had on the tag, which he still had in his

possession, and also the serial number. The five razors that were taken from the store each had cost price figures placed thereon by Mr. Elmore's brother, and also had the initials of Mr. Elmore and his brother." The evidence indicated that the murder was committed by two persons who had placed branches and boughs around a tree as if to make a blind, by the side of a path along which the deceased travelled in going from his brother's house to the store, and not far from where the body of the deceased was found. There were footprints of two persons, one smaller than the other, leading from the store to the place where deceased was killed and also away from the latter point. There were also footprints at the place of concealment, "showing that some one had stood there on the previous night." The body had been apparently dragged by two men from the path where the deceased was killed, one having hold of one foot and the other having hold of the other foot, until the progress of the body had been stopped by a pine tree lodged between his legs.

When the accused was arrested on the night of August 2, 1921, the night after the murder, he had in his possession the pistol and holster aforesaid, which were fully identified as those worn by the deceased the night before. He also had in his possession a number of the articles which had been taken from the store. The accused testified that he was in Richmond on Monday night (August 1), and purchased the shoes and garters from a Jew on Broad street, and that he bought the pistol from a negro in Petersburg for the sum of $2.00. He was taken to Richmond and asked to point out the Jew store where he bought the shoes and garters, but was unable to do so. The testimony for the Commonwealth showed clearly that neither of his statements were true, and that the accused was not far from Tobacco on Tuesday, August 2, 1921, from seven o'clock in the morning till noon, and at other points in

the neighborhood during that afternoon and till between eight and ten o'clock that night, shortly before his arrest. So that it was impossible for him to have bought the pistol in Petersburg at any time after the murder.

As pointed out, the testimony indicated that the murder had been committed by two persons, and another man charged with the murder was caught on the night of August 2, 1921, and was lynched. The contention of counsel for the defendant is that the possession of the goods taken from the store is no evidence of the murder, as the murder was not committed at the store and it is not claimed that the goods were on the person of the deceased at the time he was murdered, and as to the pistol and holster which were on the deceased at the time he was killed, that the mere possession of the pistol and holster was not sufficient evidence of the killing to warrant the verdict of the jury, and *Kibler* v. *Commonwealth*, 94 Va. 804, 26 S. E. 858, is vouched as authority for the contention. It is also suggested that the defendant could easily have procured the pistol from the lynched man without having been in any way implicated in the murder. There might be force in this suggestion if the defendant had made any such claim, but he did not do so. He said that "he bought it from a negro in Petersburg."

[1] The instruction objected to was as follows: "The court instructs the jury that while the exclusive possession of stolen goods, which were in the possession of the deceased at the time of his death, is, of itself, not even *prima facie* evidence of the murder of the deceased by the party so in possession of such goods, yet, such possession is a most material circumstance to be considered by the jury, and where, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account of how he came by the goods, such proof, if

they believe from the evidence it has been so proven, will warrant a conviction of murder. In other words, there should be some evidence of guilty conduct, besides the bare possession of the stolen property, before the presumption of murder is superadded to that of larceny, but extrinsic facts and circumstances may constitute such additional evidence. But it is for the jury, under all the circumstances of the case, to determine the value of such refusal, or false account, as evidence."

It will be observed that the instruction does not direct a verdict upon the hypothesis stated therein, but simply tells the jury that if they believe that certain facts are established it "will warrant a conviction of murder," and proceeds to warn them that "the bare possession of the stolen property is not sufficient to warrant a conviction," and then concludes by telling the jury that it is for them, "under all the circumstances of the case, to determine the value of such a refusal or false account, as evidence." The instruction plainly left it to the jury to determine the weight to be given to all the testimony in the case, and the jury could not have understood otherwise. The language of the instruction might have been more explicit as to the pistol and holster, but we are of opinion that the jury could not have been misled, under the testimony given in the cause, by the language used. The instruction states the law substantially in the language of this court in *Gravely's Case*, 86 Va. 396, 10 S. E. 431, where it was said:

"Where goods have been obtained by means of a burglary or housebreaking, the fact of such possession is a most material circumstance to be considered by the jury, and where, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account, of how he came by the goods, such proof will warrant a conviction. In other words, to use the language

of the books, there should be some evidence of guilty conduct, besides the bare possession of stolen property, before the presumption of burglary or housebreaking is superadded to that of the larceny, but extrinsic mechanical indications may constitute such additional evidence. 1 Whart. Crim. Law (9th ed.) sec. 813; *Davis* v. *People*, 1 Park. Cr. Cas. 447; *State* v. *Reid*, 20 Iowa 413; *People* v. *Beaver*, 49 Cal. 57; *People* v. *Gordon*, 40 Mich. 716; *Stuart* v. *People*, 42 Mich. 255; *Newbrandt* v. *State*, 53 Wis. 89; *Walker's Case*, 28 Gratt. (69 Va.) 969; *Taliaferro's* Case, 77 Va. 411."

[2] This holding was subsequently approved by this court in *Tyler's Case*, 120 Va. 868, 91 S. E. 171, and *Stallard's Case* (1921), 130 Va. 769, 107 S. E. 722. In *Branch's Case*, 100 Va. 837, 41 S. E. 862, it is said: "If the recent possession by the accused of articles stolen from the house broken into is proved, and it appears that he could only have gotten the articles by taking them from the house feloniously entered, this would seem to be sufficient to convict him of housebreaking." All three of these cases were cases of burglary. The same principle, it would seem, should apply to a charge of murder, where the deceased and the accused were strangers to each other, the fact of murder clearly established, and the accused on the day after the murder is found in possession of personal property which was known to have been on the person of the deceased at the time of the murder, and the accused gives a false account of how he obtained such possession.

In *Kibler* v. *Commonwealth*, 94 Va. 804, 26 S. E. 858, the charge was murder, and the instruction under consideration was as follows: "The court instructs the jury that possession of the fruits of crime recently after its commission affords a strong and reasonable ground for the presumption that the party in whose possession they were found was the real offender, unless he can account for such possession in some way consistently with his innocence. And in case of mur-

der this particular fact of presumption commonly forms also a material element of evidence in connection with other facts proved in the case." Of this instruction, Judge Keith, speaking for the court, said: "This instruction is erroneous. It is true that possession of the fruits of crime recently after its commission, where that possession is not satisfactorily explained, affords the presumption that the party in whose possession they are found was the offender; but this is not a presumption of law, but of fact. It is a deduction of fact to be drawn from the circumstances of the case, and standing alone constitutes a *prima facie* case which will warrant a conviction for larceny. A failure to account for the possession, or an unreasonable account of it, or a false account of it, will strengthen the presumption, but it is for the jury, under all the circumstances of the case, to determine its value as evidence. The recency of possession and the reasonableness of the account are elements to be considered by the jury even in a case of larceny. Now, to take this proposition of law peculiarly applicable to larceny and incorporate it into an instruction in a case of homicide, was calculated to mislead the jury, and to prejudice the prisoner. Can it be said that the mere possession of the pocket-book of the deceased by the prisoner who was under the same roof with him and constituted one of his family, would, standing alone, though unexplained, create a strong and reasonable presumption that he committed the murder? If the instruction was prejudicial and misleading in that clause which we have above considered, it was not purged of its vice by the addition to it in which the court states that 'in a case of murder this particular fact of presumption commonly forms also a material element of evidence in connection with other facts proved in the case.' The weight and value of the fact in question was to be determined by the jury in connection with the other facts proved, and for the court to state that in connection with

other facts proved it constituted a material element of evidence was throwing the weight of its judgment as to its force and effect upon the issue presented to the jury into the scales against the prisoner. That the evidence with respect to the pocket-book and its contents was admissible, there can be no doubt, and being admissible it was a cir cumstance to be considered by the jury in connection with all the other facts proved. They may have been of such a nature as to render the possession of the pocket-book a material circumstance, or the attending circumstances may have been such as to deprive that particular fact of any significance. It was for the jury to say."

It is manifest that the court was of opinion that the instruction took away from the jury the determination of the value of the testimony as to recent possession. It was well said that "the recency of the possession and the reasonableness of the account are elements to be considered by the jury even in a case of larceny." It was not contended that the doctrine of "recent possession" was not applicable to a murder case, or that conviction of murder might not be founded thereon in connection with other incriminatory evidence. In that case the deceased and the accused were relatives living under the same roof, and it was not shown that any false or unreasonable account was given as to the manner in which the possession was obtained. Here the parties were strangers and a false account was given as to the manner of obtaining possession, and the arrest was made and the goods found in the possession of the accused almost in hot pursuit. It was on the day after the murder. *Wilson* v. *U. S.*, 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090, contains an interesting and instructive discussion of the doctrine of recent possession of goods obtained by murder, and the effect thereof in connection with other inculpatory testimony, but it is too long for insertion. A conviction of murder of the first degree was sustained by the unanimous

judgment of the court, Chief Justice Fuller delivering the opinion. In that case, the murder was not discovered nor the goods found on the accused until two weeks after the murder. A number of instructions were given by the trial court, among them the following:

(1) "The law says that if a man has been killed, and killed in such a way as to show that it was done murderously, under the law I have given you defining the crime of murder, then you are to look to see whether the party accused of the killing was found in possession of any of the property of the man killed. If so, that is the foundation for a presumption. It is not conclusive in the beginning, but it is a presumption which you are to look at just as you would look at it as reasonable men outside of the jury box. The party so found in possession of such property, recently after the crime, is required to account for it, to show that as far as he was concerned that possession was innocent and was honest. If it is accounted for in that way, then it ceases to be the foundation for a presumption. If it is not accounted for in that satisfactory, straight-forward and truthful way that would stamp it as an honest accounting, then it is the foundation for a presumption of guilt against the defendant in this case, just upon the same principle as if a certain man is charged with robbery or larceny, and is found in the possession of the property stolen or robbed recently after the crime, he is called upon to explain that possession. If his explanation of it is truthful; if it is consistent; if it is apparently honest; if it is not contradictory; if it is the same at all times; if it has the *indicia* of truth connected with it, that may cause to pass out of the case the consideration of the presumption arising from the possession of the property, but if it is not explained in that way, it becomes the foundation of a presumption against the party who is thus found in possession of that property."

In discussing the instructions, the Chief Justice said:

"Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence. 1 Greenl. Ev. (15th ed.) sec. 34. In *Rickman's Case,* 2 East P. C. 1035, cited, it was held that on an indictment for arson, proof that property was in the house at the time it was burned, and was soon afterwards found in the possession of the prisoner, raises a probable presumption that he was present and concerned in the offense; and in *Rex* v. *Diggles* (Willis Cir. Ev. *53), that there is a like presumption in the case of murder accompanied by robbery. Proof that defendant had in his possession, soon after, articles apparently taken from the deceased at the time of his death is always admissible, and the fact, with its legitimate inference, is to be considered by the jury along with the other facts in the case in arriving at their verdict. *Williams* v. *Commonwealth,* 29 Penn. St. 102; *Commonwealth* v. *McGorty,* 114 Mass. 299; *Sahlinger* v. *People,* 102 Ill. 241; *State* v. *Raymond,* 46 Connecticut, 345; Whart. Cr. Ev., sec. 762.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Nor can there be any question that if the jury were satisfied from the evidence that false statements in the case were made by defendant, or on his behalf, at his instigation, they had the right not only to take such statements into consideration in connection with all the other circumstances of the case in determining whether or not defendant's conduct had been satisfactorily explained by him upon the theory of his innocence, but also to regard false statements in explanation or defense made or procured to be made as in themselves tending to show guilt. The destruction, sup-

pression or fabrication of evidence undoubtedly gives rise to a presumption of guilt to be dealt with by the jury. 1 Greenl., sec.. 37; 3 *Id.* sec. 34; *Commonwealth* v. *Webster,* 5 Cush. 295.

"The testimony of the defendant in a criminal case is to be considered and weighed by the jury, taking all the evidence into consideration, and giving such weight to the testimony as in their judgment it ought to have. *Hicks* v. *United States,* 150 U. S. 442, 452; *Allison* v. *United States,* 160 U. S. 203. The trial judge did not charge the jury to treat the testimony of the defendant in a manner different from that in which they treated the testimony of other witnesses, and left it to them to give to his evidence, under all the circumstances affecting its credibility and weight, such consideration as they thought it entitled to receive.

"We cannot reverse this judgment for error in either of the instructions complained of."

Under our practice, instructions expressing the opinion of the court on the weight of the evidence cannot be given by the trial court, as some of the instructions in the *Wilson Case* did, but the instructions in that case indicate what may be considered by the jury in arriving at a verdict in cases of that kind.

[3, 4] There are expressions in some of the cases relating to "recent possession" to the effect that such possession raises a *prima facie* presumption of the guilt of the accused, and that the burden is on the accused to overcome such presumption. It would be more accurate to say that it is a matter of evidence to be considered by the jury along with other evidence, in determining the guilt or innocence of the accused. The burden is on the Commonwealth to establish the guilt of the accused beyond a reasonable doubt, and this burden continues throughout the trial and never shifts. It is not a case of a presumption of guilt which the accused must overcome in order to avoid conviction. It is enough

if the accused can raise a reasonable doubt as to his guilt. If, upon the whole evidence in the case, including "recent possession" a reasonable doubt remains in the minds of the jurors as to the guilt of the accused, he is entitled to the benefit of that doubt. *State* v. *Lax* (N. J.), 59 Atl. 18, and cases cited. The jury were fully advised of this doctrine by other instructions given at the instance of the prisoner, two of which were as follows:

"The court instructs the jury that the accused is presumed to be innocent, and that this presumption follows him throughout every stage of the trial, and that the burden of showing the guilt of the accused to the exclusion of every reasonable doubt is upon the Commonwealth, and this burden never shifts and always rests upon the prosecution, and while the Commonwealth may prove such facts as may raise the presumption of guilt unless they are rebutted by the accused, still, after the evidence is closed, if, upon a consideration of the whole, there is a reasonable doubt of his guilt, the jury should acquit."

"The court instructs the jury that the law presumes the accused to be innocent until he is proved guilty beyond a reasonable doubt, if there is upon the minds of the jury any reasonable doubt of the guilt of the accused, the law makes it their duty to acquit him, and circumstances of mere suspicion or probability of his guilt, however strong, are not sufficient to warrant a verdict of guilty, but before you can convict the prisoner you must be satisfied from the evidence not only that the circumstances are consistent with the prisoner's guilt, but the jury must be satisfied from the evidence that the facts are such as to be inconsistent with any other rational conclusion than that he is guilty, and that the doubt must not be an arbitrary or unreasonable doubt, or a doubt of immaterial or nonessential circumstances, but must be a reasonable doubt of some fact

or facts in the evidence essential for the jury to believe to warrant a verdict of conviction."

[5] The instruction complained of was not in conflict with these instructions, and left it entirely to the jury to consider and determine the weight to be given to all the testimony submitted to them. It is unnecessary for us to say anything as to the right of the accused to remain silent as to how he obtained the goods, as he did not remain silent, but upon the evidence in the case we find no error in said instruction to the prejudice of the accused.

From what has been said, it is manifest that we cannot say that the verdict is either plainly contrary to the evidence, or is without evidence to support it. The judgment of the trial court will, therefore, be affirmed.

*Affirmed.*