# Wytheville.

## WRIGHT v. THE COMMONWEALTH.

### JULY 1st, 1886.

1. CRIMINAL P R O C E E D I N G S—*Burglary—Indictment.*—Indictment charging a breaking into the dwelling-house of J., with intent to steal, and stealing therefrom, is an indictment for burglary, and is good.

2. IDEM—*Description of goods.*—Such indictment charging that prisoner six labor tickets of the value of six dollars then and there feloniously did steal, take and carry away is good, though it does not specify the articles, or state that they were the property of J., or of any other person.    *Vaughan's Case,* 17 Gratt. 576.

3. IDEM—*Secondary evidence* —Upon such an indictment charging prisoner with stealing the labor tickets, parol evidence of them is ad - missible without further notice to produce them.

4. IDEM—*Case at bar.*—A case wherein the evidence warrants the verdict of guilty of burglary.

5. IDEM—*Burglary—Possession of stolen goods.*—Though the mere possession of the stolen property might not be *prima facie* evidence of the burglary charged in the indictment, yet, in connection with other evidence of such burglary, evidence of exclusive possession of the stolen property is admissible.

6. IDEM—*Cases compared and distinguished.*— *Walker's Case,* 28 Gratt. 969, differs from *Taliaferro's Case,* 77 Va. 411, in that the possession of the stolen property by accused in latter case was not exclusive.

7. IDEM—*Joinder of offences.*—Prisoner may receive judgment on so much of the allegation proved as constitutes an offence.

Error to judgment of circuit court of Roanoke county, rendered 9th April, 1886, affirming judgment of county court of said county, rendered 17th March, 1886, sentencing Lewis

Wright, whom a jury had found guilty of burglary, and fixed his confinement in the penitentiary at the period of five years. Exceptions were taken to several rulings of the county court, and a writ of error and *supersedeas* was obtained by the prisoner from one of the judges of this court.

Opinion states the facts.

*R. H. Woodrum*, for the plaintiff in error.

*R. A. Ayers*, Attorney-General, for the Commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

The indictment contains two counts. The first count charges the burglary and the larceny of certain "labor tickets." The petitioner insisted that he should not be compelled to go to trial on the said first count, because the description of the property alleged to have been stolen was too uncertain and vague to enable him to meet the charge; and he moved the court to quash the said first count; which motion the court overruled.

The petitioner also demurred to the entire indictment upon the ground that, had the first count been quashed, the other count would have no caption, and no *venue* would have been laid.

The first count in the indictment charges that "Lewis Wright, on the first day of September, 1885, in the said county, in the night time of that day, feloniously and burglariously did break and enter into the dwelling-house of one Andrew Johnson, situated in said county, with intent the goods and chattels of him, the said Andrew Johnson, in the said dwelling-house then and there being, then and there feloniously and burglariously to steal, take, and carry away, and certain tickets (commonly called 'labor tickets,') of the value, to wit: six of

the value of ninety cents each, one of the value of fifteen cents, one of the value of fifty-five cents, and one of the value of seventy-five cents—the whole of the value of six dollars and eighty-five cents of the goods and chattels of the said Andrew Johnson, in the said dwelling-house, in the county aforesaid, then and there being found," &c., &c.

We are of opinion that the description in the indictment of the property alleged to have been stolen is sufficient. In *Vaughan's Case,* 17 Gratt. 576, the indictment charged Vaughan with breaking and entering, in the night time, the shop of Hugh F. Lyle, with intent, &c., and that "one lot of queensware" of the value of $60, then and there being found, he did feloniously steal, take and carry away, &c. Upon motion, in arrest of judgment, the indictment was held good; and the court said, p. 579: "The allegation of an actual larceny is only in aid of the allegation of intent. * * * Such being the object for which the charge of an actual larceny is introduced in cases of this character, it need not be laid with the same formality as in an indictment for the larceny itself." (*Larned* v. *Commonwealth,* 12 Metc. p. 260; *Commonwealth* v. *Doherty,* 10 Cush. p. 52; *Regina* v. *Clarke,* 1 C. & K. p. 421; S. C. 47 Eng. C. L. R.)

The prisoner could have been tried on the last count in the indictment. The venue is laid in the second count by the words *"in the said county."* The caption of the indictment is "Virginia—Roanoke county, to wit;" and that caption applies to the whole indictment, and to each count in it. Therefore, there is no error in the judgment overruling the motion to quash the first count, and refusing to sustain the demurrer to the entire indictment.

The next assignment of error is the action of the court in allowing the witness, Johnson, to describe the stolen labor tickets, without producing them, or presenting them, to the jury.

There was no error in this. Wharton's Crim. Ev. sec. 199, says: "Parol evidence is admissible to prove the contents of documents (including deeds, records, letters, notes, accounts, wills and private memoranda), which have been lost or destroyed, without any suspicion of spoliation attached to the party offering to prove them by such evidence." Section 200 says: "It is also admissible to prove, by secondary evidence, a document which it is out of the power of the party to produce." (*Dyer* v. *Smith,* 12 Com. p. 383; *Denton* v. *Hill,* 4 Hayw. p. 73.)

The record in this case shows sufficiently the inability of the Commonwealth to produce the tickets. The witness, Andrew Johnson, from whom they were stolen, says: "I afterwards got my tickets back. I have spent the tickets—spent them at Mr. Camp's."

The indictment charges the prisoner with stealing the tickets; and parol evidence of them is admissible without further notice to produce them. (See Wharton's Crim. Ev. sec. 216.)

The next and last assignment of error is embodied in the second bill of exception, which contains the evidence in the case; and counsel for the plaintiff in error asserts that, "from an examination of the evidence, it appears that there is nothing in said evidence at all to warrant even a suspicion of housebreaking." Andrew Johnson expressly says: "When I came back next day, I found the window of my house had been broken open." And the witness, Lizzie Johnson, states that "when she left the house that night, she locked it, and fastened the window by putting shingles in such a manner as to prevent its being raised; that the window sash was taken out, and lying on the ground next morning." It is proved that the prisoner had seen Johnson have the labor tickets; that he knew Johnson would be absent from home that night of the housebreaking; that he went over to Johnson's house on the morning of that day and invited and urged the wife of Johnson to

come over and stay at his, prisoner's house, that night; that Johnson's wife declined to agree so to do, for the reason assigned to him, that her husband, Johnson, had cautioned her to remain at home during his absence, because there was so much stealing going on; that, notwithstanding this refusal, the prisoner's wife went over to Johnson's house that evening and renewed the importunity for Johnson's wife to come over and spend the night at prisoner's house, and prevailed upon her so to do; that at first, she refused, but afterwards, being afraid to stay at home alone, she did go over to prisoner's house about 100 yards off, about dusk, and remained there all that night; that the prisoner would not go to bed and did not take off his clothes; said he was going away, and he did go away, and stayed away some time, and said, when he came back, that he had been to the fair grounds to get some peaches for his party, but the dogs ran him away and he did not get any peaches; that he said he had spent his last tickets for chickens and cider, when he was working at Blue Ridge; that Andrew Johnson went to the store of W. P. Camp, a merchant in Roanoke city, the morning after his house was broken open and entered, and told Mr. Camp that his house had been broken open and his labor tickets taken, and he described the tickets—their number and value, minutely and particularly to Mr. Camp; that on the night of that day Lewis Wright, the prisoner, went to the store of Mr. Camp, and delivered to. Mr. Camp labor tickets corresponding exactly in number and size with the tickets which Johnson had said to Camp that morning had been stolen from his house the night before, and which he had exactly described to Camp; and that the prisoner dealt out some of the said tickets with Camp in his store, and directed him to credit his account with the rest; that the prisoner, when arrested, gave false and contradictory accounts of how he obtained the tickets.

The verdict was warranted by the law and the facts. *Walker's Case*, 28 Gratt. 969. "Though the mere possession of the stolen property might not be *prima facie* evidence of the burglary or housebreaking charged, yet in connection with other evidence of such burglary or housebreaking, evidence of such possession of stolen goods is admissible; and upon proof of a larceny having been committed, and of the goods stolen having been found, shortly afterward, in possession of the prisoner, the general rule will attach that  *  *  it is incumbent upon the prisoner to prove how he came by the property, otherwise the presumption is, that he obtained it feloniously." (Sec. 2, Russell on Crimes, ed. 1887, p. 123; Davis' Crim. Law, p. 193; 3 Greenleaf Ev., sec. 31; 3 Rob. Prac., old, p. 224).

The facts of the case at bar take it from out the case of *Taliaferro* v. *Commonwealth*, 77 Va. 411. In Taliaferro's case, the goods which had been stolen from the dwelling-house of K., which had been broken open and entered at night, were not found in the exclusive possession of the accused, nor even in her possession at all; they were found in a house spread upon a bed, in a room occupied by Louisa Poindexter and the accused; but it did not appear that the bed, upon which the stolen bed-clothes were found, was occupied by the accused; and it was proved that a negro man, the paramour of Louisa Poindexter, was in the habit of visiting the room and staying there all night. *Lewis, P.*, in delivering the opinion of the court said: "Here the goods stolen from the house in which the plaintiff in error was charged with having committed burglary, when first seen the day after the larceny, were not found in her exclusive possession or subject to her exclusive control. It is true that they were afterwards in her possession, and were sold by her, she saying that she had gotten them from Louisa Poindexter. And while her conflicting statements as to the way in which she came by them, certainly create strong sus-

picion against her, we do not think the testimony sufficient to establish her guilt of the crime of burglary, for which she was indicted, or of housebreaking, of which she was convicted."

In the case at bar the proof descriptive of the property stolen corresponds sufficiently with the allegations in the indictment. Bishop Crim. Law, Vol. I, sec. 798: "The conclusion is, that whatever the offence alleged, there may be a conviction for any other, if within the words of the allegation." (Citing Bishop's Crim. Proced., Vol. I, sections 415–420; *Benham* v. *The State*, 1 Iowa, 542; *Prindeville* v. *People*, 42 Ill., 217; *The State* v. *Butman*, 42 N. H., 490; *The State* v. *Dumphey*, 4 Minn., 438).

*Idem*, section 799, "The rule is not confined to these cases of a crime within a crime, but it is general, that the defendant may receive judgment on so much of the allegation proved as constitutes an offence, whether what is thus proved is the same in degree as the entire matter charged, or different in degree or in nature. For example—one indicted for printing and publishing a libel, may be acquitted of the printing, and convicted of the publishing; one charged with a larceny of property of more than one hundred dollars in value, may be found guilty of the larceny in a less value," &c., &c. (See Notes 1 and 5, and the numerous cases there cited).

We are of opinion, for these reasons and upon these authorities, that the judgment complained of is right, and the same must be affirmed.

LEWIS, P., and RICHARDSON, J., dissented.

JUDGMENT AFFIRMED.