## Richmond.

### GRAVELY v. COMMONWEALTH.

#### DECEMBER 5th, 1889.

1. CRIMINAL PROCEEDINGS—*Burglary—Possession of stolen goods.*—Recent possession of stolen goods is not *prima facie* evidence of guilt of burglary; but such possession is a material fact to be considered by the jury, and, with other culpatory facts, such as a refusal by the accused to give any, or his giving a false account of how he came by the goods, will warrant a conviction.
2. IDEM— *Case at bar.*—The circumstances here *held* to justify verdict of guilty.

Error to refusal of judge of circuit court of Henry county to award a writ of error to judgment of county court of said county, rendered June 12, 1889, on an indictment against John Gravely for a felony, a jury having found him guilty and fixed the period of confinement in the penitentiary at ten years.

The charge in the indictment was that, on the 15th day of March, 1889, in the night time, he feloniously broke and entered the kitchen of Abner Richardson, with intent to steal, and did then and there feloniously steal, take and carry away one hundred pounds of flour, thirty pounds of corn meal and two dozen eggs, the property of the said Richardson.

At the trial the prosecutor, Richardson, testified that, upon going into the kitchen about daylight the morning after the alleged felony was committed, he observed flour and meal scattered on the floor, and that he missed about one hundred

pounds of flour, thirty or forty pounds of meal and two dozen eggs; that the flour was "white and of good quality;" that when he went to the kitchen he found the door locked and the window closed, but that the window was not kept *fastened*, and could be easily opened and closed by sliding backwards and forwards. The ground outside, near the window, he said, was hard, and he could see no distinct tracks there, but thought he could see signs of tracks. He then looked outside of the enclosure around his dwelling house and kitchen, and discovered a large track, which he could see distinctly, and which was leading both in the direction of and from the kitchen. The left track showed that the boot or shoe that made it had a half-sole, which made a distinct impression. The ground was soft from a then recent rain, which enabled him on that day and on the succeeding day (Sunday) to follow the tracks, which he did, to the fence enclosing the prisoner's house, only a few yards from the house. The witness measured the tracks, and applied the measure to the boots of the prisoner, after his arrest Sunday evening, and it corresponded with the boots; the left boot having a half-sole that also corresponded with the impression of a half-sole on the ground above mentioned. It was also proved that the kitchen was always locked and the window closed at night.

Another witness for the commonwealth, Raleigh Gaulin, testified that on the Sunday after the alleged felony he was at the house of the prosecutor, and saw the tracks described by the latter. He also followed the tracks, as the prosecutor did, and compared their measures with the prisoner's boots, and found that the boots and the tracks corresponded.

Seymore Finney, another witness for the commonwealth, testified that he was the constable who arrested the prisoner; and that when he went to his house to make the arrest he found there, in a barrel, about thirty or forty pounds of good flour and about a peck of meal in a sack; that during the search for the missing property, the prisoner did not inquire

what the charge against him was, and made no inquiry of any kind until they had nearly reached the house of the justice, more than a mile from the prisoner's house, when he told him (the witness) that he got the flour from Barrow's mill, kept by Robert Prilliman. The witness compared the flour found at the prisoner's house with a sample taken from the prosecutor's barrel, which was the same barrel from which the missing flour had been taken, and could see no difference. The two were of the same appearance and quality. The witness also testified that, after the examination before the justice, the prisoner said to him that he did not deny his boots made the tracks in question, but that he was not in the boots at the time.

Prilliman, the miller at Barrow's mill, testified that about *two weeks* before the prosecutor's kitchen was broken into, he ground thirty or forty pounds of flour for the prisoner, but that it was made of *smutty wheat, and was dark.* The witness examined the flour found at the prisoner's house, and did not think it was the flour he had ground for the prisoner; it was whiter, and a better quality of flour, and he thought he was a good judge of flour, as he had followed the business of a miller for a number of years.

For the defence two witnesses were examined, one of them the father of the prisoner, who testified that the prisoner was at his house the day of the alleged house-breaking, and remained there until an hour or two after dark, and then left for home; that his house was between the house of the prosecutor and the prisoner's house, about a quarter of a mile from the latter. He also said the prisoner, when at his house, borrowed a peck of meal, which he carried away with him.

The other witness for the defense, Ada Eggleton, testified that she lived about two or three miles from the prisoner's house; that she went there the evening the kitchen was said to have been broken into, and remained there all night; that the prisoner came in from his father's house about two hours after dark, and remained at home the rest of the night; that she

occupied the same room with him and his family, and did not think he could have left the room during the night without her knowing it. She also testified that soon after the prisoner came in from his father's, Alex. Stockton came to the house, to borrow the prisoner's boots, saying he would return them by daylight the next morning. He took the boots, she said, and did return them before daylight. The prisoner left the house about daylight with his axe, going to a cutting, where he was employed. After he had gone, Stockton returned to the house, having with him, the witness said, a small quantity of flour, which he said was to pay the prisoner for the use of his boots. The prisoner's wife refused to take the flour, saying John (the prisoner) did not charge him anything. The witness then remarked to Stockton that *she* would take the flour, and he gave it to her, and she put it in the barrel in which it was afterwards found by the constable. The witness left the prisoner's house the same day, but did not take the flour with her. She told the family, she said, that she would return on Sunday and get it.

On cross-examination, she testified, among other things, that when she went to the prisoner's house to spend the night, she took some meal with her, and that she usually took meal with her when she visited in the neighborhood, so as not to be a burden on anybody; that she was particular about this.

Upon this evidence the jury returned a verdict of guilty, and ascertained the term of confinement in the penitentiary at two years. The prisoner thereupon moved for a new trial, but the motion was overruled, and judgment pronounced in accordance with the verdict. He then applied to the judge of the circuit court of Henry county for a writ of error, which was refused, whereupon the case on a writ of error was brought to this court.

*George D. Gravely & Son,* for the plaintiff in error.

*Attorney-General R. A. Ayers*, for the commonwealth.

LEWIS, P., delivered the opinion of the court.

The single question we have to determine is, whether there was error in overruling the prisoner's motion for a new trial. And in determining this question we must be governed by the rule, so often announced by this court, that where the evidence consists of circumstances or presumptions, a new trial, on the ground that the verdict is contrary to the evidence, ought to be granted only in a case of a plain deviation, since to do otherwise would be to assume the province of the jury. It ought not to be granted merely because the court, if on the jury, would have given a different verdict, but the verdict must be *plainly* wrong to justify the court in setting it aside; and this restriction, it is needless to say, applies *a fortiori* to an appellate court. *Read's case*, 22 Gratt., 924; *Finchim's case*, 83 Va., 689.

Viewed in this light, the verdict must stand.

It is a general rule of the common law, with regard to the evidence in cases of larceny, that the possession of goods recently stolen is *prima facie* evidence of guilt, and throws upon the accused the burden of accounting for that possession. This rule, it is true, has never been held by this court to apply with the same effect in cases of burglary or house-breaking, and the decided weight of authority is that it does not. Still, where goods have been obtained by means of a burglary or house-breaking, the fact of such possession is a most material circumstance to be considered by the jury, and where, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account, of how he came by the goods, such proof will warrant a conviction. In other words, to use the language of the books, there should be some evidence of guilty conduct, besides the bare possession of the

stolen property, before the presumption of burglary or house-breaking is superadded to that of the larceny, but extrinsic mechanical indications may constitute such additional evidence. 1 Whart. Crim. Law (9th ed.), sec. 813; *Davis* v. *People,* 1 Park. Cr. Cas., 447; *State* v. *Reid,* 20 Iowa, 413; *People* v. *Beaver,* 49 Cal., 57; *People* v. *Gordon,* 40 Mich., 716; *Stuart* v. *People,* 42 *Id.,* 255; *Neubrandt* v. *State,* 53 Wis., 89; *Walker's case,* 28 Gratt., 969; *Taliaferro's case,* 77 Va., 411.

In *Commonwealth* v. *McGorty,* 114 Mass., 299, which was a prosecution for burglary, an instruction to the jury was approved, which was in these words:

"Possession of stolen property immediately after it has been stolen, if an unsatisfactory account is given as to its possession, affords presumptive evidence of guilt. The presumption is not conclusive, but is to be dealt with by the jury alone as a mere inference of fact. If the larceny was effected by a breaking and entering, and immediately after the breaking and entering, the property stolen is found in the possession of persons who give improbable and unsatisfactory accounts of how they come in possession of it, the possession affords presumptive evidence of their guilt. The circumstances under which they are found in possession of the property—the time, the place, their conduct, their account of it, are all matters for the consideration of the jury."

Applying this rule to the present case, we are of opinion that although there was not strict proof of the identity of the stolen flour, yet that in view of the nature of the article, the recency of the possession, and all the surrounding circumstances, the evidence was sufficient. At all events, it was not *plainly* insufficient. "Unless the possession be recent," says Starkie, "it is necessary to give strict proof of the identity of the goods, which is not so requisite where the possession is *very recent.*" 2 Stark. Ev., 841.

And in 2 Russ. on Crimes, at p. 178, the learned author, after laying down the rule that where *all* that can be proved

concerning property found in the possession of a supposed thief, is that it is of the same kind as that which has been lost, this will not in general be deemed sufficient evidence of a larceny, and that some proof of identity will be required, says : " But where the fact is very recent, and the property consists of articles, the identity of which is not capable of strict proof, from the nature of them, the conclusion may be drawn that the property is the same, unless the prisoner can prove the contrary."

Thus, he says, if a man be found coming out of another's barn, and upon his being searched, corn be found upon him, of the same kind as that in the barn, the evidence of guilt will be pregnant; and cases have frequently occurred where persons employed in carrying sugar and other articles from ships and wharves have been convicted of larceny, upon evidence that they were detected with property of the same kind upon them, recently upon coming from such places, although the identity of the property, as belonging to such and such persons, could no otherwise be proved. See, also, 2 East, P. C., 657.

Another writer of acknowledged authority, in treating of the same subject, uses this language : " It is not necessary that the identity of stolen property should be invariably established by positive evidence. In many such cases identification is impracticable, and yet the circumstances may render it impossible to doubt the identity of the property, or to account for the possession of it by the accused upon any reasonable hypothesis consistent with his innocence." Wills, Circum. Ev., 130.

This principle, without any undue extension, we think, may be properly applied to the present case; for, obviously, what is sufficient evidence of identity of stolen goods is, like what is recent possession, a question to be determined upon the circumstances of each particular case. 3 Greenl. Ev., sec. 32; Steph. Dig., C. L., Art. 308. If the mere finding of an article

upon a person, when coming from a place where property of the same kind is stored, is, unexplained, sufficient evidence of guilt, there is no reason why a conviction may not be sustained where property, the identity of which, from its nature, is not capable of strict proof, has been stolen, and articles of the same kind are shortly thereafter found in the possession of the accused, who had the opportunity to commit the larceny, and who was probably present when it was committed, and where all the circumstances are such as render it morally certain that he came by the goods feloniously. In such a case, why may not the identity of the property be inferred as well as in the class of cases above mentioned? Of course, before the jury can rightly convict in any case, they must be satisfied, beyond a reasonable doubt, of the identity of the property, and if this fundamental rule be attended to, a wrong conclusion will probably seldom, if ever, be reached.

We think, therefore, that the evidence of the identity of a part, at least, of the stolen property in the present case is sufficient. And the presumption arising from the prisoner's recent possession of that part is strengthened by the attendant circumstances; that is to say, his false account of how he came by the flour; the probability that he was present when the felony was committed; and his conduct afterwards, when the search for the stolen property was being made; all these are circumstances, accompanying the recent possession of the fruits of the crime, from which the jury were warranted in drawing the conclusion that he not only stole the flour, but that he made use of the means by which access to it was obtained.

The evidence, moreover, of his principal witness at the trial, which was contradictory of his own previous account of the way in which the flour came into his possession, was of itself sufficient to create a presumption against him. The statement of the witness that thirty or forty pounds of good flour were tendered in return for the use of the prisoner's boots for a

night, is, to say the least, improbable. Indeed, the evidence of the witness was so improbable throughout, that the jury were warranted in disbelieving it, as they evidently did.

The judgment is affirmed.

JUDGMENT AFFIRMED.