# Wytheville.

## BRANCH v. COMMONWEALTH.

### June 19, 1902.

1. CRIMINAL LAW—*Larceny—Recent Possession—Burglary.*—The possession of goods recently stolen is *prima facie* evidence that the person found in possession is the thief, but not that he is guilty of burglary, where the goods were obtained by burglary, unless it appears that he could only have gotten them by taking them from the house feloniously entered. If, however, the accused refuse to give any account, or give a false account of how he came into possession of the goods, or if other culpatory facts be proved, he may be found guilty of the burglary.

Error to a judgment of the Circuit Court of King William county, rendered April 4, 1902, affirming a judgment of the County Court of said county, whereby plaintiff in error was sentenced to the penitentiary for two years.

*Reversed.*

The opinion states the case.

*George P. Haw*, for the plaintiff in error.

*Attorney-General William A. Anderson*, for the Commonwealth.

CARDWELL, J., delivered the opinion of the court.

Plaintiff in error, Alley Branch, a youth of about sixteen years of age, was indicted in the County Court of King William county for breaking and entering a certain store-house, known

as a canning-house, and stealing therefrom ten cans of corn of the value of ten cents each; 125 paper canning checks, each purporting to be an order for two cents, stamped "L. S. M."; and, upon his trial, was found guilty and sentenced to the penitentiary for two years. He thereupon applied for a writ of error to the Circuit Court of King William county, which was awarded, and, upon a hearing, the judgment of the County Court was affirmed. To this judgment of the Circuit Court, a writ of error was awarded by one of the judges of this court.

The question to be considered is whether the evidence, as certified in the record, is sufficient to sustain the verdict of the jury.

It appears that one Mrs. Smith owns and operates, at times, a vegetable cannery or packing-house, which is a wooden building situated at Lester Manor, in King William county. In this building is a room used as an office, which is usually locked with a padlock; the door being inside of the building. The cannery was put in operation on the 7th of August, 1901, and corn was canned that day, and tomatoes the next. It was not in operation on the 9th and 10th of August, but on one of those days John Green, manager for Mrs. Smith, went into the canning-room, and discovered that a window which opened into this room had been broken, and that nine cans of corn were missing. He nailed up the window, but did not then enter or examine the office, nor did he notice that it had been broken, if such was the case. On the 13th of August Green again went into the cannery, and, on going to the office door, discovered that it had been broken, and, upon examination, 125 two-cent checks were missing. These checks are round disks of paper board about the size and thickness of a 25-cent piece, and were given in pay only for peeling tomatoes, each representing two cents to the holder, and passed to some extent, as it seems, in that locality, as currency. At the time of the housebreaking, and prior to the arrest of the prisoner, about eighty of these checks had been paid out at the cannery

to twenty or twenty-five women. On the 23d of August, the prisoner was hired at the cannery, and about night Green discovered him outside of the cannery, on the platform which runs the length of the house and even with the floor of the cannery, eating from a can of corn. He then counted the cans in the cannery and found one missing, but the one out of which the prisoner was eating was not one of the cans supposed to have been taken when the cannery was broken open. About the last of August, or the first of September following, the prisoner used forty-nine of these "tomato checks" in the purchase of a pair of shoes at one of the stores at Lester Manor, and twelve or fifteen others were seen in his possession, about two weeks after the cannery started—August 7th—but the number shown to have been in his possession does not correspond with the number said to have been missing when it was discovered that the cannery office had been broken into. In fact, the witness, Green, does not say, and could not have known, how many of these checks were in the office at that time, as he had not counted them for several weeks, and, perhaps, a month prior. None of the nine cans of corn alleged to have been taken when the cannery was entered were ever seen in the possession of the prisoner, or shown to have been in his possession at any time. Nor does he give conflicting accounts of how he got the "tomato checks" seen in his possession; his statement to the justice before whom he was carried when arrested being that he picked them up in the road wrapped in a rag, and there is not a word of testimony to the contrary.

While it is well settled that possession of goods recently stolen creates a presumption that the person found in possession of them is the thief, it is nowhere held that such possession is even *prima facie* evidence of guilt in cases of burglary and housebreaking.

It is true, as contended for the Commonwealth, that in such a case, recent and unexplained possession of the stolen goods is a

pregnant circumstance, and, accompanied by other incriminating facts, may be conclusive of guilt of the more serious crime of breaking the house from which it is shown that the goods were stolen; and if the recent possession by the accused of articles stolen from the house broken into is proved, and it appears that he could only have gotten the articles by taking them from the house feloniously entered, this would seem to be sufficient to convict him of housebreaking. Whar. Cr. L., sec. 1605; Bish. Cr. Pro., secs. 152, 739 and 747; *Walker's Case*, 28 Gratt. 969.

Hence it was held in *Graveley's Case*, 86 Va. 396, that while recent possession of stolen goods is not *prima facie* evidence of guilt of burglary, such possession is a material fact to be considered by the jury, and, with other culpatory facts, such as a refusal by the accused to give any, or his giving false account of how he came by the goods, will warrant a conviction. But, as we have seen, the prisoner in this case makes no conflicting statements as to how he got possession of the "tomato checks," alleged to have been stolen from the cannery when it was broken into, and no other incriminating fact is proven against him. Therefore, the verdict and judgment convicting him of housebreaking rests alone on his possession of some of these "tomato checks," at least two weeks after the door to the office in the cannery is discovered to have been broken open, and without the slightest proof that these same checks were in the office at that time.

It follows that we are of opinion that the evidence but raises a mere suspicion of the prisoner's guilt, and is plainly insufficient to sustain the verdict of the jury. *Bundick* v. *Commonwealth*, 97 Va. 783 and 787. Therefore, the judgment of the Circuit Court of King William county complained of must be reversed and annulled, and, this court proceeding to enter such judgment as the Circuit Court should have entered, the verdict of the

jury will be set aside, and the case remanded to the County Court for a new trial, if the court and the attorney for the Commonwealth consider that a better case against the prisoner for house-breaking can be made out.

*Reversed.*