## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

WILLIAM MYERS AND THOMAS F. STEWART V. COMMON-
WEALTH.

March 16, 1922.

Absent, West, J.

1. ASSIGNMENT OF ERRORS—*Bill of Exceptions—Criminal Law—
General Bill of Exceptions Certifying all the Evidence and
Noting Objections to the Evidence and Exceptions Taken.*—An
assignment of error was to the effect that the court erred in
refusing to "sustain objections to the admissibility of the
evidence as shown by the exceptions in the record noted."
There was no bill of exceptions or certificate of the judge in
the record pointing out the rulings complained of in the assign-
ment of error. The exceptions mentioned in this assignment
were contained in the general bill of exceptions certifying all
of the evidence and noting at intervals that objections were
made to the admissibility of evidence, that the objections were
overruled, and exceptions taken.

   *Held:* That this was not sufficient to bring up such rulings, or
   any of them, for review on appeal.

2. BURGLARY—*Indictment and Information—Count Charging Break-
ing and Larceny Regarded as an Indictment for Breaking.*—
An indictment which contained only one count charged the
breaking and entering a railroad car with intent to commit
larceny therein, and further charged actual larceny at the same
time and place.

   *Held:* That the indictment must be regarded as an indictment for
   car breaking.

3. BURGLARY—*Car Breaking—Indictment—Description of Property
Stolen.*—An allegation of an actual larceny in an indictment
for car breaking is only in aid of the allegation of intent. Such
being the object for which the charge of an actual larceny is
introduced, it need not be laid with the same formality as in
an indictment for the larceny itself.

4. BURGLARY—*Car Breaking—Indictment—Description of Property
Stolen—Case at Bar.*—The indictment in the instant case, a

prosecution for car breaking, was sufficiently specific in its description of the property stolen to have sustained a conviction of larceny thereunder, even if it had contained no other description of the property stolen than the species or names of the articles, their number, and the name of the special owner thereof (the goods having been stolen from a common carrier), all of which was set forth in the indictment. In addition, however, the indictment also named the consignees to whom the property was shipped, thus furnishing further means of identifying the property beyond all reasonable doubt.

5. BURGLARY—*Car Breaking—Instruction that if Either of Joint Defendants Broke and Entered the Car, the Jury Should Find them Guilty, Held not to be Misleading.*—In a prosecution of joint defendants for car breaking, an instruction was given that if the jury find that the defendants, *"or either of them,* broke and entered the railroad car with intent to commit larceny therein, you should find *them* guilty, as charged in the indictment * * *."   (Italics supplied.)

   *Held:* Although if this language was taken literally it was obviously erroneous, yet when the instruction is read in the light of the evidence, it could not have misled the jury to the prejudice of either of the accused.

6. BURGLARY—*Car Breaking—Recent Possession—Instructions.*—In a prosecution for car breaking, it was not error to refuse an instruction which, in substance, told the jury that possession of the goods stolen from the car by the accused after the burglary was not a circumstance which could be considered at all as evidence of the guilt of the accused of the crime of car breaking.

7. BURGLARY—*Possession of Stolen Goods—Other Inculpatory Circumstances.*—Where goods have been obtained by means of a burglary or housebreaking, the fact of possession of the goods by accused is a most material circumstance to be considered by the jury, and where, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account, of how he came by the goods, such proof will warrant a conviction. In other words, there should be some evidence of guilty conduct, besides the bare possession of the stolen property, before the presumption of burglary or housebreaking is superadded to that of the larceny.

8. BURGLARY—*Possession of Stolen Goods—Effect of Such Possession Question for the Jury—Instruction as to Recent Possession.*—The conclusion to be drawn from the circumstance of the possession of the stolen goods by accused after the burglary is one

of fact, and not of law, and is one which is peculiarly and solely in the province of the jury. And any instruction on the subject by the court must be phrased with great care, so as not to infringe upon the prerogative of the jury as sole judges of the credibility and weight to be given to such testimony.

9. BURGLARY—*Recent Possession—Corpus Delecti.*—The *corpus delecti* must be proved before any inference of guilt can arise from the possession of the fruits of the crime.

10. BURGLARY—*Recent Possession—Circumstances of Each Particular Case.*—The significance of the possession of the stolen goods by the accused will vary with the special facts and the other evidence in each case, such as the nearness or remoteness of the proven possession to the crime charged, the nature of the thing possessed, whether any explanation is given by the accused of the possession, whether, if the accused is silent, his silence is consistent with his innocence of the crime, the accused's explanation, if he undertakes to give one, and such other circumstances as ought reasonably to influence a juror's opinion.

11. BURGLARY—*Recent Possession—Remoteness of Possession.*—If the possession of the stolen goods by the accused is very remote from the crime, the judge in his discretion may exclude it as having no probative force.

12. VERDICT—*General Verdict—Indictment Containing one Count for Car Breaking and Larceny.*—Where an indictment charging car breaking and larceny from the car contained but one count, a general verdict of guilty, as charged in the indictment, is a verdict finding the accused guilty of the major offense of car breaking.

13. BURGLARY—*Larceny—Recent Possession of Stolen Goods.*—The rule which the Virginia cases lay down, in regard to the inference of guilt which the jury may be warranted in drawing from the possession of the stolen property by the accused, as applicable to cases of burglary and housebreaking is, in truth, precisely the same as the general rule of the common law on the subject as applied to larceny cases.

14. BURGLARY—*Recent Possession of Stolen Goods by Accused—Additional Evidence of Guilt Necessary to Sustain Conviction.*—Where, in addition to the possession by the accused of goods obtained by feloniously breaking and entering a car, actual false swearing by the accused on the subject of the possession of the stolen goods is shown, or it is shown that accused gave a false account of the possession of the stolen goods, or it is shown that the larceny and breaking and entering were committed at the same time and by the same person, and accused, although testifying, does not claim that he obtained the pos-

session of the goods from any one or in any other way than by means of the felonious breaking and entering, in any one of these situations there would be sufficient evidence of other inculpatory circumstances, besides the bare possession of the stolen property, to support a verdict of guilty of breaking and entering.

15. BURGLARY—*Recent Possession—Defense not Made by Accused not Considered on Appeal.*—Where both of the accused in a prosecution for car breaking voluntarily took the stand as witnesses, a defense which they did not make for themselves in their testimony, such as that they obtained the possession of the stolen property from some one else, who may have committed the offense of car breaking, cannot be regarded on appeal as entitled to sufficient weight to disturb the verdict of the jury in view of the evidence in the case; and the guilty conduct of both of the accused in false swearing cannot be said on appeal not to have been evidence tending to show their guilt of car breaking.

16 BURGLARY—*Indictment—Bailments—Ownership of Stolen Goods.*—In a prosecution for burglary, where there is both a general and special owner of the goods taken, as where the goods are in possession of a common carrier, the ownership may be laid either in the special or general owner.

17. BURGLARY—*Indictment—Bailments—Ownership of Stolen Goods.*—In the instant case, an indictment for car breaking, the special ownership of the common carrier of the goods taken was laid in the indictment by allegation of such facts constituting such ownership, and such facts, and, hence, such ownership, were proved at the trial. Such being the case, proof of the general ownership and loss by the general owner was unnecessary.

18. CRIMINAL LAW—*Peremptory Instructions — Burglary.*— In a prosecution for car breaking, the defense asked for an instruction that, "There is no evidence in this case to support the charge of car breaking."

   *Held:* That, while section 6003, Code of 1919, which expressly forbids such an instruction in a civil case, does not apply to criminal cases, the practice of giving such instructions as that in question cannot be approved by the courts, although not forbidden by statute.

Error to a judgment of the Corporation Court of the city of Roanoke.

*Affirmed.*

The accused were jointly indicted. The indictment contains only one count, and in that one count charges that both of the accused, at a certain time and place stated, did feloniously break and enter a certain railroad car, the number, etc., of which is stated, "then and there in the lawful custody and control" of a certain railroad company designated, "with the intent to commit larceny therein;" and further charges both of the accused with actual larceny, at the same time and place, consisting of the feloniously taking, stealing and carrying away from said railroad car of "twenty-six raincoats of the value of $253.50 and twelve rain hats of the value of $6.50 * * *, billed to" (certain consignees named, in a certain State named), "and forty-eight pairs of shoes of the value of $276.00, billed to" (certain consignees named, at a certain place in a certain State, both named); "all of which said raincoats, rain hats and shoes being then and there of the aggregate value of $536.00, and being then and there in the lawful custody and possession of the said" (railroad company, again naming it), "and in said railway car being then and there found * * *."

The accused demurred to the indictment on the ground that it "contained no specific description of the articles alleged to have been taken." The court overruled the demurrer.

Thereupon, the accused were jointly arraigned and pleaded not guilty. Upon this issue there was a trial by jury which resulted in the following verdict: "We, the jury, find the defendants, T. J. Stewart and Wm. Myers, guilty as charged in the within indictment, and fix their punishment at three years each in the penitentiary;" and the judgment under review was entered accordingly.

The material facts and circumstances as the jury were warranted in finding them from the evidence, may be summarized as follows:

The *corpus delicti,* both of the burglary and of the larceny
charged in the indictment, were established by the proof
beyond a reasonable doubt.

Upon the question of the identity of the thief or thieves,
the jury were warranted by the evidence in finding the fol-
lowing facts, namely:

That the offenses of the car breaking and the larceny
charged in the indictment were committed at one and the
same time by the same person or persons. The situation
upon this subject, as shown by the record, is as follows:
The car was inspected after it arrived in the city, at 6:54
P. M. on August 2, 1920, and found to need some small re-
pairs. The doors of the car were at that time found to
be fastened and sealed 'and the car was in such condition
that it could not have been entered through the doors with-
out breaking the seals. In that condition the car was, dur-
ing that night, placed on a repair track. The next morn-
ing at about 9 o'clock the car repairers, when they came to
repair the car, found the seals broken; that the doors had
been opened, and that some of the raincoats, hats and shoes
which had been in the car had been stolen, some broken
boxes, shoes and raincoats being still in the car, lying scat-
tered over the car floor. In their testimony in the case,
neither of the accused nor any witness in their behalf
claimed that the accused obtained possession of the stolen
goods, subsequently found in their possession as below
stated, from any other person, or in any other way, than
from the custody of the railroad company by means of the
breaking and entering of the said car. The sole claim made
by the testimony of and for the accused on this subject was
that neither of them ever had any of the stolen goods in
their possession.

Three days after the car breaking and larceny aforesaid,
several boxes of the stolen shoes, with the name of the con-
signees stated in the indictment appearing on the boxes,

were seen by a witness for the Commonwealth, in the same city in which the car breaking and larceny were committed, in a garage in which the accused, Stewart, kept his automobile. The garage was kept locked by Stewart at the time. This witness, in Stewart's absence, looked through a crack in the side boarding of the building and saw the boxes of shoes aforesaid. The witness was the owner of the garage and rented it to Stewart about three months before he discovered the stolen goods, as just stated. At the time Stewart rented the garage, Myers, the other accused, accompanied Stewart, and, from time to time thereafter, Myers and Stewart were seen together at the garage. Subsequently to the aforesaid discovery of the stolen shoes, and during the same month of such discovery, the wife of the owner of the garage, also a witness for the Commonwealth, saw Myers come from the direction of the garage with several pairs of shoes, which, from the description given by the witness, the jury were warranted in finding were some of the stolen shoes, and carry them upstairs to a room rented by his sister, in which Myers sometimes stayed about this time. Myers took the stand as a witness in behalf of himself and of Stewart, and upon cross-examination admitted that he was familiar with the garage aforesaid; had been in there several times. He gave a false account, however, of how he came by the shoes which the witness for the Commonwealth last mentioned saw him carrying from the garage, if the testimony of that witness is to be believed. On this subject, Myers testified that he "might have carried some old shoes that (he) had left up in the garage there somewhere" from the garage to his sister's apartments, but denied that he so carried any shoes of the description of the stolen shoes from the garage, or ever saw any such shoes in the garage or any shoe boxes therein.

During the same month that the shoes were discovered in the garage, as aforesaid, Stewart sold two pairs of the stolen

shoes to one Philpots, Stewart stating at the time of the sale as his reason for his selling the shoes that they were too small for him.  Stewart also testified as a witness in behalf of himself and Myers, and admitted selling two pairs of shoes to Philpots at the time aforesaid, but gave a false account of how he came by them, claiming that he bought them while on a trip in West Virginia.  These two pairs of shoes were identified by the testimony for the Commonwealth as having come from the lot of shoes described in the indictment, by proof which amounted to practically absolute certainty.  It was proved before the jury that the lot of shoes described in the indictment had certain numbers stamped by the manufacturers, at the time they were made, on the lining on the inside of the shoes and on the soles of the shoes, underneath the heels.  The numbers, on the two pairs of shoes just mentioned, on the lining on the inside of the shoes, had been inked out when they were sold to Philpots, and so appeared at the trial; but at the trial, when the heels were removed, the numbers found there were the numbers put thereon by the manufacturers on certain of the shoes described in the indictment, and so identified these shoes as having come from that lot of shoes almost beyond all possibility of doubt.

As to the raincoats and hats:  The car breaking and larceny aforesaid was in the nighttime or early morning.  The day following, or upon the next day, according to the testimony for the Commonwealth, Stewart and Myers were, in the same city aforesaid, seen in the manual possession of seven of the raincoats and eight of the rain hats which were stolen, as aforesaid.  They drove up to the store of an Assyrian named Assaid, in said city, in an automobile, accompanied by two other men.  One of the men staid in the automobile.  Stewart and Myers, accompanied by the other man, came into Assaid's store.  Stewart and Myers brought in with them the raincoats and hats just men-

tioned, and asked if Assaid would buy them or handle them. Assaid was not himself present, his wife and son being in the store in charge of it. The wife and son first declined to buy or handle the goods, stating to Stewart and Myers that Assaid was about to sell his stock of goods in bulk and expected to inventory the stock that week. Whereupon, Stewart and Myers said: "You can inventory them" (the raincoats and hats they had brought in the store, as aforesaid) "with the stock and whatever you get for them you can pay us, and we won't fall out over the price," and left the goods there with that understanding. Neither of the accused ever came back to the store or asked for any settlement for the goods. These goods were found in the store by an officer, some twenty days after they were left there, as aforesaid, by Stewart and Myers. The manufacturer's labels on them had been removed, but when the bunch of coats were taken up, one of the labels was found lying "sort of on the sleeve" of one of the coats, which was a label of the manufacturer of the raincoats and hats which were stolen, as aforesaid. In their testimony in the case, both Stewart and Myers denied all knowledge of the raincoats or hats just mentioned; denied that they ever had any of them in their possession; said that it was not true that they carried them into the Assaid store or ever were in that store.

At the trial, the court gave the following instructions (Nos. 2, 3, 4 and 5, being given at the request of the accused):

"Instruction No. X.—You are instructed that the burden is upon the Commonwealth to prove the guilt of the defendants beyond a reasonable doubt. If you believe from the evidence beyond a reasonable doubt, first, that the defendants, *or either of them,* broke and entered the railroad car with intent to commit larceny therein, you should find *them* guilty, as charged in the indictment; or, second, if you be-

lieve that they stole the goods out of the car without breaking and entering, beyond a reasonable doubt, you should find them guilty of grand larceny, without convicting them of breaking and entering. If you have a reasonable doubt of any of those things, you should find them not guilty. (Italics supplied.)

"2. The court instructs the jury that every person charged with crime is presumed in law to be innocent, and the burden is upon the Commonwealth to prove every essential element of the offense with which he is charged, before you can convict, beyond every reasonable doubt, and unless you so believe from the evidence in this case that the Commonwealth has proven the guilt of the defendant beyond every reasonable doubt, then it is your duty to find the prisoners not guilty.

"3. The court further instructs the jury that if you have a reasonable doubt in your minds as to the guilt or innocence of the prisoners at the bar, then it is your duty to give them the benefit of the doubt, and acquit them.

"4. The court further instructs the jury that a reasonable doubt in every criminal case is not a mere form to be disregarded by the jury, but a substantial part of the law of this land, and before you can convict the accused in this case you must have an abiding conviction in your minds, based upon the evidence in this case that he is guilty beyond every reasonable doubt.

"5. The court instructs the jury that circumstances of suspicion alone, however grave and serious, can never warrant a jury in returning a verdict of guilty, and you are, therefore, instructed that if the evidence in this case arouses in your minds a question of suspicion alone, it would be your duty to acquit."

The court refused to give the following instructions asked for by the accused:

"A. The court instructs the jury that this is an indict-

ment against William Myers and Tom Stewart for breaking and entering a car in the possession and control of the Norfolk and Western Railway, and for stealing and carrying away raincoats, rain hats and shoes from said car; and you are further instructed that even if you believe from the evidence that the defendants or ether of them afterwards acquired or were found in possession of any goods stolen from said car that such possession in no event can be construed as evidence of the breaking and entering of said car.

"B. The court instructs the jury that this is a charge of car robbery and larceny of goods in transit, and the burden is upon the Commonwealth to show by affirmative proof that the owner of said goods was deprived of such ownership.

"C. The court instructs the jury that there is no evidence in this case to support the charge of car breaking."

*A. B. Hunt* and *Lawson Worrell*, for the plaintiff in error.

*Jno. R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

[1] One of the assignments of error in the petition is as follows:

"The court erred in failing and refusing to sustain objections to the admissibility of the evidence as shown by the exceptions in the record noted."

There is no bill of exceptions or certificate of the judge in the record pointing out the rulings complained of in the assignment of error just referred to. The exceptions men-

tioned in this assignment of error are contained in the general bill of exceptions certifying all of the evidence and noting at intervals that objections were made to the admissibility of evidence, that the objections were overruled by the court and exceptions taken. It is well settled that this is not sufficient to bring up such rulings, or any of them, for review on appeal. *Norfolk & Western R. Co.* v. *Shott,* 92 Va. 34, 22 S. E. 811, and cases therein cited; and *Kibler's Case,* 94 Va. 804, 813, 26 S. E. 858.

Therefore, the assignment of error just mentioned will not be considered.

The questions raised by the other assignments of error will be disposed of in their order as stated below.

1. Is the indictment sufficiently specific in its description of the property alleged to have been stolen?

This question must be answered in the affirmative.

[2, 4] The indictment, since it contains only one count, must be regarded as an indictment for car breaking. *Speers' Case,* 17 Gratt. (58 Va.) 574; *Vaughan's Case,* 17 Gratt. (58 Va.) 576; *Butler's Case,* 81 Va. 159. Concerning the sufficiency of the description, in such an indictment, of the property alleged to have been stolen, this is said in *Vaughan's Case,* just cited: "* * * allegation of an actual larceny is only in aid of the allegation of intent. If the allegation were struck out altogether, enough would remain to describe the offense of which the prisoner has been convicted. Such being the object for which the charge of an actual larceny is introduced in cases of this character, it need not be laid with the same formality as in an indictment for the larceny itself." (Citing cases.) "It is always better, however, to lay the charge of larceny in proper form, to avoid objection in case the prisoner should, as he may, on such a count as this, be found not guilty of the breaking and entering, but guilty of the larceny." See to same effect *Wright's Case,* 82 Va. 183.

The indictment in the case in judgment is sufficiently specific in its description of the property stolen to have sustained a conviction of larceny thereunder, even if it had contained no other description of the property stolen than the species or names of the articles, their number, and the name of the special owner thereof (this being a case of special ownership or bailment, the goods having been stolen from a common carrier—a special owner), all as set forth in the indictment. 2 Bish. New Cr. Proc. (4th ed.), sections 699, 700, 702, 710. The indictment, however, also names the consignees to whom the property was shipped. This furnished further means of identifying the property beyond all reasonable doubt. Therefore, in any aspect of the case, the indictment was sufficient in its description of the property.

[5] 2. Did the court err in giving instruction X, copied in the statement preceding this opinion?

This question must be answered in the negative.

The only portion of this instruction which is claimed to have been erroneous is italicized in the copy of it appearing above. The material portion of the instruction reads as follows:

"If you believe from the evidence beyond a reasonable doubt * * * that the defendants, *or either of them,* broke and entered the railroad car with intent to commit larceny therein, you should find *them* guilty, as charged in the indictment * * *."

It is obvious that if this language were to be understood as meaning literally and in the abstract what it says, the instruction would be erroneous. But every instruction must be construed in the light of the evidence which has been introduced before the jury. In the case in judgment, the circumstance that both of the accused were seen together and were shown by the evidence to have acted in concert in the occurrences which most incriminated them, prom-

inently appears from the record. And it is so obvious, when the instruction is read in the light of the evidence, that the jury were intended to be instructed that they could find both of the accused guilty of the car breaking if they believed that only one of them did the breaking, only in the event that the jury believed from the evidence that the other, in such case, was aiding and abetting the commission of the offense; and, indeed, a different understanding of the instruction would have been so plain a direction to the jury to find a verdict that would shock the sense of justice of every one, that we are satisfied the jury were not misled by the instructions to the prejudice of either of the accused.

[6] 3. Did the court err in refusing to give instruction A, asked for by the accused?

This question must be answered in the negative.

It will be observed that it was not asked that the jury be told by this instruction that the mere evidence of the possession referred to was not of itself sufficient to establish the guilt of the accused of the crime of the car breaking. The instruction as asked would have told the jury, in substance, that the possession referred to was not a circumstance which they could consider at all as evidence of the guilt of the accused of the crime of the car breaking. Such an instruction, according to all of the authorities, would have been erroneous. 2 Bish. Cr. Proc. (4th ed.), sections 152, 739-747, and the authorities cited in the notes to these sections; *Henderson's Case,* 98 Va. 800, 34 S. E. 881; *Gravely's Case,* 86 Va. 396, 10 S. E. 431; *Hall's Case,* 3 Gratt. (44 Va.) 593; *Wright's Case,* 82 Va. 183; *Branch's Case,* 100 Va. 837, 41 S. E. 862; *Tyler's Case,* 120 Va. 868, 91 S. E. 171; *Stallard's Case,* 130 Va. 769, 107 S. E. 722; *Elmoe's Case, ante,* p. 529, 110 S. E. 257; *State* v. *Brady,* 121 Iowa 561, 97 N. W. 62, 12 L. R. A. (N. S.) 199, and note thereto, and authorities therein cited.

As said in 2 Bish. New Cr. Proc., sec. 152, *supra:* "The goods stolen—in a burglary, as connecting the defendant with the *corpus delicti,* his recent possession of them, whether charged in the indictment to have been stolen or not, the circumstances of the possession and how far he accounted therefor, may be shown. We shall see (*post,* sections 739-746), that in cases of pure larceny, opinions are not quite uniform upon the effect of this evidence; it is the same in burglary. The question is much influenced by the facts special to the particular case. In reason, the jury, not the court, should determine what this evidence proves. * * *" (Citing numerous authorities and among them *Gravely's Case, supra* (86 Va. 396, 10 S. E. 431).

[7] As said in *Gravely's Case:* "* * * Where the goods have been obtained by means of a burglary or house breaking, the fact of such possession is a most material circumstance to be considered by the jury, and where, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account, of how he came by the goods, such proof will warrant a conviction. In other words, to use the language of the books, there should be some evidence of guilty conduct, besides the bare possession of the stolen property, before the presumption of burglary or house breaking is superadded to that of the larceny * * *."

[8, 11] As held by all the modern cases, including all of the cases in Virginia on the subject, the conclusion to be drawn from the circumstances of the possession of the stolen goods, in cases of the character of that in judgment, is one of fact, and not of law, and is one which is peculiarly and solely in the province of the jury. And it is a subject more than ordinarily beset with difficulties and on which any instruction which may be given by the court must be phrased with very great care indeed so as not to infringe

upon the prerogative of the jury as sole judges of the credibility and weight to be given to the testimony.   The issues of fact involved in such case are frequently numerous and, under our practice, the evidence bearing upon such issues need to be weighed and considered by the jury, where there is a trial by jury, uninfluenced by the opinion of the trial judge.   There is the *corpus delicti* to be proved before any inference of guilt can arise from the possession of the fruits of the crime.   2 Bish. New Cr. Proc., secs. 152 and 739-(2).   Then there are the special facts of the particular case concerning the circumstances of the possession, in connection with the other evidence.   The significance of the possession will vary with the special facts and the other evidence in each case; among which are the nearness or remoteness of the proven possession to the crime charged; the nature of the thing possessed, as passing readily from hand to hand or not, or as likely or not likely to have been put by another in the possession of the accused without his knowledge at the time; whether any explanation is given by the accused of the possession; whether, if the accused is silent on the subject, his silence, under the circumstances, is consistent with his innocence of the crime imputed to him; what explanation is given of the possession, where the accused undertakes to give one; together with such other circumstances as ought reasonably to influence a juror's opinion. 2 *Idem*, sec. 740; *Kibler's Case*, 94 Va. 804, 814-15, 26 S. E. 858.   What is said above is subject to this qualification: As said in 2 Bish. New Cr. Proc., sec. 742:   "The just doctrine would seem to be that if the possession is very remote, yet how remote must depend on the special facts of the case, the judge, at his discretion, will exclude it as having no sufficient tendency to prove anything   *   *   *."   It is not claimed, however, in the case in judgment, that the possession was so remote as to come within this qualification.

The record in the case before us shows that there were "other inculpatory circumstances proved," and "some evidence of guilty conduct" of both of the accused, "besides the bare possession of the stolen property." Hence, we have no hesitancy in holding that the trial court committed no error in refusing to give the instruction under consideration, which, in substance, would have made the court say to the jury, as a conclusion of law, that they could not consider the evidence as to the possession of the stolen goods, even though they might believe from the evidence that there were other inculpatory circumstances proved, and other evidence of guilty conduct of both of the accused, besides the bare possession of the stolen property.

[12] 4. Did the court err in refusing to set aside the verdict?

The indictment containing but one count, and the verdict, being a general one, was a verdict finding the accused guilty of the major offense of car breaking, charged in the indictment. *Speers' Case, supra* (17 Gratt. [58 Va.] 574); *Butler's Case, supra* (81 Va. 162).

The position is taken for the accused that, even if the evidence with respect to the possession of the stolen goods could have been properly considered by the jury, "there is not a syllable of evidence in the record to connect, (the accused) with the robbery of (the) car * * * and while the possession of recently stolen articles raises the presumption of a larceny of the articles, it has never been held that the possession of the stolen property, unaccompanied with any guilty conduct, could raise the presumption of house breaking." Citing *Henderson's Case, Gravely's Case* and *Branch's Case, supra.*

[13] It is unnecessary for us to consider here whether there is, accurately speaking, any difference between the rule prevailing in modern times in almost, if not quite, all of the jurisdictions, including Virginia, upon the subject of

the inference of guilt of the accused which the jury may be warranted in drawing from the circumstances of the possession of stolen property, in larceny, as distinguished from burglary or house breaking cases, further than to say this: There are statements in the opinions in a number of the cases in Virginia to the effect that "the general rule of the common law" on the subject in cases of larceny has never been held in Virginia to apply to the same effect in cases of burglary or house breaking. But the fact remains that the rule which the Virginia cases lay down as applicable to cases of burglary and house breaking is, in truth, precisely the same as "the general rule of the common law" on the subject as applied to larceny cases, according to Mr. Bishop and the great weight of authority.

In *Wright's Case, supra* (82 Va., at p. 188), indeed, this is said: "Though the mere possession of the stolen property might not be *prima facie* evidence of the burglary or house breaking charged, yet, in connection with other evidence of such burglary or house breaking, evidence of such possession of stolen goods is admissible, and upon proof of a larceny having been committed, and of the goods stolen having been found shortly afterwards in possession of the prisoner, the general rule will attach that   *   *   * it is incumbent upon the prisoner to prove how he came by the property, otherwise the presumption is that he came by it feloniously.   Russell on Crimes, Ed. 1887, p. 123; Davis' Crim. Law, p. 193; 3 Greenleaf Ev., sec. 31; 3 Rob. Prac., old, p. 224." This is a statement of the rule under consideration, as applicable to burglary and cases of that character, almost, if not precisely, in the very form in which the oldest authorities lay it down as applicable to cases of larceny. In *Branch's Case, supra* (100 Va., at pp. 839-840, 41 S. E. 862), the modern doctrine on the subject, applicable alike to the former class of cases just mentioned and to larceny cases, is approved as in force in Virginia, by citing the

same sections of 2 Bish. New Cr. Proc., as those we have above cited. In the opinion of the court in *Branch's Case,* 100 Va. at pp. 839-40, 41 S. E. 862, 863, this is said: "* * * recent unexplained possession of stolen goods is a pregnant circumstance and, accompanied by other incriminating facts, may be conclusive of guilt of the * * * crime of breaking the house from which it is shown that the goods were stolen; and if the recent possession by the accused of articles stolen from the house broken into is proved, and it appears that he could only have gotten the articles by taking them from the house feloniously entered, this would seem to be sufficient to convict him of house breaking. Whart. Cr. L., sec. 1605; Bish. Cr. Proc., sections 152, 739 and 747; *Walker's Case,* 28 Gratt. (69 Va.) 969." And *Gravely's Case* is also cited and the doctrine of that case is restated.

And in *Stallard's Case, supra,* this is said: "The jury might have convicted of larceny only, upon the evidence of recent unexplained and exclusive possession of stolen goods, but when to the evidence of such possession was added the evidence that the goods were initially acquired by entry of Sivert's barn in the nighttime, and a false account of how defendant came by the goods, the jury were justified in convicting the prisoner of the higher offense."

There can, indeed, be little doubt but that, in the particular under consideration, as in others, there has been a development and improvement in the condition of the law in modern times. Not that the law itself has changed, but the statement of it has changed. As said in 2 Bish. New Cr. Proc., sec. 740 (3): "* * * the doctrine in some of our States is not now the same as in earlier years." (Referring to numerous cases in thirty of the American States and in England.) "It will be comforting to the well-wishers of our jurisprudence, who examine these cases, and who remember the condition of the law on this subject fifty years ago, to note that very little now remains in our

reports of unfortunate old doctrines which have melted before inflowing light."

It would take us too far afield to here pursue the inquiry as to what is the precise rule, stated as aforesaid as applicable in larceny cases, to which reference is made in some of the cases of burglary and house breaking in Virginia. It is sufficient here to say that the rule, as stated in the last-named cases as applicable to burglary and the like character of cases, is, in substance, the same as laid down in the quotation we have made above from *Gravely's Case.*

[14] The precise question we have presented for our decision, therefore, is this:

5. Does proof that the initial wrongful possession of the goods in question was obtained by means of the felonious breaking and entering, coupled with the further proof (a) of actual false swearing by the accused on the subject of the possession of the stolen goods (such as, for example, on voluntarily taking the stand as a witness, his testifying that he never had any possession of any of the stolen goods, when there is ample evidence for the Commonwealth to the contrary), or (b) of his giving a false account of the possession of the stolen goods; or (c) that the offenses of the breaking and entering and of the larceny were committed at the same time and by the same person or persons, and the circumstance that the accused, although testifying as a witness in the case, does not claim that he obtained the possession of the goods from any one or in any other way than by means of the felonious breaking and entering—furnish sufficient evidence of the "other inculpatory circumstances," or other "guilty conduct, besides the bare possession of the stolen property," which, according to the authorities, will support a verdict of the jury finding the accused guilty of the crime of the breaking and entering with the intent to commit larceny?

We are of opinion that in any one of the three situations

stated, there would be sufficient evidence of the super-
added facts mentioned to support such a verdict. And, as
appears from the statement preceding this opinion, all three
of these situations appear from the record in the case be-
fore us, as the jury were warranted by the evidence in find-
ing, and involve both of the accused, with respect certainly
to some of the raincoats, and some of the shoes also, which
constituted portions of the stolen property according to
the evidence for the Commonwealth.

It should be said that in all of the Virginia cases which
have been referred to in argument, and which have been
cited above, in which convictions of burglary or house-
breaking have been sustained, there were some circum-
stances in evidence, such as tracks supposed to be those
of the accused, or possession of tools supposed to have been
used in the breaking, or other like circumstances, to con-
nect the accused with the breaking and entering; and in
none of these cases did the conviction rest upon such sit-
uations as (a), (b) or (c), aforesaid, alone; but the court
did not base its decisions in these cases upon the exist-
ence of such special circumstances; and, in reason and upon
just principles, which are elaborated in the authorities
above cited and need not be further set forth here, in such
situations the possession of the stolen property cannot be
said to be unaccompanied by evidence of guilty conduct,
and the guilty conduct, which the evidence tends to prove,
is, in such situations, so inextricably linked up and con-
nected with the felonious breaking and entering that it
has convincing probative value as tending to establish the
guilt of the accused of that offense; and, where a verdict
of guilt of such offense is returned by the jury, must be
considered as evidence supporting the verdict in its finding
connecting the accused with such offense.

[15] As said in *Elmoe's Case, supra:* "It is unnecessary
for us to say anything as to the right of the accused to remain

silent as to how he obtained the goods, as he did not remain silent." Both of the accused in the case in judgment voluntarily took the stand as witnesses, and a defense which they did not make for themselves in their testimony, such as that they obtained the possession of the stolen property from some one else, who may have committed the offense of car breaking, cannot be regarded by us as entitled to sufficient weight to disturb the verdict of the jury in view of all the evidence in the case; and the guilty conduct of both of the accused in false swearing cannot be said by us not to have been evidence tending to show their guilt of the car breaking.

[16] 6. Did the court err in refusing to give instruction B, asked for by the accused, to the effect that it was incumbent on the Commonwealth to prove that the general owners of the goods were deprived of such ownership?

. This question must be answered in the negative. ·

As said in 2 Bish. New Cr. Proc. (4th ed.), secs. 720, 721:

"2. Where there is both a general and special owner, the rule is nearly universal that the pleader may charge the goods as belonging to either, though often the convenience of making proof will suggest practical grounds for choice. For example—

"3. Goods stolen from a common carrier—may be laid as his or as the general owner's. More fully—

"Sec. 721. 1. Special ownership.—The rule is general * * * that where chattels are taken feloniously from any bailee or other special owner * * * the ownership may be laid either in such possessor or the real owner, at the election of the pleader."

[17] In the case in judgment the special ownership of the common carrier was laid in the indictment by allegation of the facts constituting such ownership, and such facts, and, hence, such ownership, was proved at the trial. Such

being the case, proof of the general ownership and loss by the general owner was unnecessary.

There is but one remaining question presented for our decision by the assignments of error, and that is this:

[18] 7. Did the court err in refusing to give instruction C, asked for by the accused, which was as follows: "The court instructs the jury that there is no evidence in this case to support the charge of car breaking."

We have a statute (section 6003 of the Code) which expressly forbids such an instruction being given in civil cases. As held in *Montgomery's Case,* 98 Va. 852, at page 856, 37 S. E. 1, it is not the practice in the courts of this State to give such an instruction in criminal cases. And, besides, since the Commonwealth has no appeal in criminal cases such as that in judgment and, hence, has no means of correcting the error if such an instruction is erroneously given in such cases, it is manifest that the inauguration of the practice of giving such instructions as that in question cannot be approved by the courts, although not forbidden by statute.

The case will be affirmed.

*Affirmed.*