# Richmond

## WILSON V. MILLER v. COMMONWEALTH.

April 22, 1946.

Record No. 3060.

Present, All the Justices.

18

The opinion states the case.

*W. A. Hall, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *V. P. Randolph, Jr., Assistant Attorney General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The indictment in this case charged that the defendant, Wilson V. Miller, unlawfully and feloniously did break and enter into a certain store house known as Cox's Service Station, with the intent to commit larceny and did then and there feloniously and unlawfully take, steal and carry away thirteen gasoline coupons, U. S. currency in the amount of $16.20, and one glass bank, the property of H. J. Cox.

There was a trial by a jury which returned this verdict: "We the jury find the defendant guilty as charged and fix the penalty as 4 years."

Thereupon, the court having demanded of defendant that he speak, if he had anything to say as to why sentence should not be pronounced in accordance with the verdict, and having elicited nothing in delay thereof, sentenced

defendant to confinement in the penitentiary for a period of four years.

Upon his arraignment and before the jury was sworn, the defendant, by counsel, moved the court to quash the writ of *venire facias* because the original writ included the names of twenty-four prospective jurors, and because the list was drawn by the clerk in the presence of the judge, without the presence of a reputable citizen, as required by section 4895, Code of Virginia (Michie).

The court overruled the motion and this is assigned as error.

The motion made by counsel is set forth in the record as follows:

"Mr. Hall: I have a preliminary motion. My motion, Your Honor, is to this effect. The record here shows that the original *venire facias* was issued on the 29th of March, 1945, summoning twenty-four prospective jurors; that this list was supplemented by another writ bearing the date of the 13th day of April, 1945, *and I understand* that the original list was drawn by the Clerk in the presence of the Court without the presence at that time of a reputable citizen and that is not a compliance with Section 4895 of the Code and for that reason I ask that the Court quash the venire." (Italics supplied.)

Since the writ of *venire facias* is not embodied in the record and no motion was made in this court to supply the omission, we would be going too far afield to attempt a discussion of the validity of the writ on the mere *understanding* of counsel that the list from which the *venire facias* was drawn was not in compliance with section 4895 of the Code. However, it is a significant fact that the order entered by the court includes this language:

"And the Sergeant, having returned the *Venire Facias* drawn in the manner prescribed by law, and of the number so summoned and attending, a panel of twenty names, free from exceptions, for the trial of the defendant was made up and completed."

No objection was interposed to the entry of the order and, therefore, it is taken as a verity. ·

The second assignment of error calls in question the action of the court in overruling the motion of defendant to quash the indictment.

The grounds alleged in the trial court were that the indictment does not "express the kind and denomination of the currency * * * stolen and * * * does not describe the nature and character of the coupons alleged to have been taken."

Counsel, in the oral argument before this court, abandoned the contention made in the trial court and attacked the indictment on entirely new grounds, raised here for the first time.

This assignment is without merit, for the reason that this court will not take cognizance of the new attack on the indictment, as it is contrary to Rule 22 of the court.

The refusal of the court to set aside the verdict of the jury and award a new trial on the ground that the verdict was contrary to the law and the evidence, is assigned as error.

The evidence on the part of the Commonwealth and the evidence adduced by the defendant is in direct conflict. This being true, the verdict of the jury has resolved all conflicts in favor of the Commonwealth, and the case comes to this court with the sanction of the trial court upholding the verdict rendered.

The rule of law applicable to the case at bar has been repeatedly set forth in the decisions of this court.

In *Gravely* v. *Commonwealth*, 86 Va. 396, 400, 10 S. E. 431, it is said:

"Viewed in this light, the verdict must stand.

"It is a general rule of the common law, with regard to the evidence in cases of larceny, that the possession of goods recently stolen is *prima facie* evidence of guilt, and throws upon the accused the burden of accounting for that possession. This rule, it is true, has never been held by this court to apply with the same effect in cases of burglary or housebreaking, and the decided weight of authority is that

it does not. Still, where goods have been obtained by means of a burglary or house-breaking, the fact of such possession is a most material circumstance to be considered by the jury, and where, in addition to such possession, other inculpatory circumstances are proved, such, for example, as the refusal of the accused to give any account, or his giving a false account, of how he came by the goods, such proof will warrant a conviction. In other words, to use the language of the books, there should be some evidence of guilty conduct, besides the bare possession of the stolen property, before the presumption of burglary or housebreaking is superadded to that of larceny, but extrinsic mechanical indications may constitute such additional evidence. 1 Whart. Crim. Law (9th Ed.), sec. 813; *Davis* v. *People*, 1 Park. Cr. Cas. 447; *State* v. *Reid*, 20 Iowa 413; *People* v. *Beaver*, 49 Cal. 57; *People* v. *Gordon*, 40 Mich. 716; *Stuart* v. *People*, 42 Mich. 255, 3 N. W. 863; *Neubrandt* v. *State*, 53 Wis. 89, 9 N. W. 824; *Walker* v. *Commonwealth*, 28 Gratt. (69 Va.) 969; *Taliaferro* v. *Commonwealth*, 77 Va. 411.

"In *Commonwealth* v. *McGorty*, 114 Mass. 299, which was a prosecution for burglary, an instruction to the jury was approved, which was in these words:

" 'Possession of stolen property immediately after it has been stolen, if an unsatisfactory account is given as to its possession, affords presumptive evidence of guilt. The presumption is not conclusive, but is to be dealt with by the jury alone as a mere inference of fact. If the larceny was effected by a breaking and entering, and immediately after the breaking and entering, the property stolen is found in the possession of persons who give improbable and unsatisfactory accounts of how they come in possession of it, the possession affords presumptive evidence of their guilt. The circumstances under which they are found in possession of the property—the time, the place, their conduct, their account of it, are all matters for the consideration of the jury.' "

The doctrine stated in the *Gravely Case* has been re-

affirmed in *Drinkard* v. *Commonwealth*, 163 Va. 1074, 178 S. E. 25, and in *Lane* v. *Commonwealth*, 184 Va. 603, 35 S. E. (2d) 749.

The acts relied upon by the Commonwealth, as set forth in the record, are as follows: At approximately two o'clock a. m., on Saturday, February 17, 1945, police officers Fortune and Tatum were making their rounds on Bainbridge street in the city of Richmond. They observed the defendant and a young man named Harris coming out of Toler street. The officers accosted the two men and recognized the defendant. Observing that the pants pocket of defendant was "bulging," Officer Fortune searched defendant and found in his pockets a quantity of small currency. When asked where he got the money, defendant replied that he had won it in a "crap game." The defendant and Harris were taken to the police station and in about twenty minutes thereafter the officers were informed by Sergeant Hall that Cox's filling station had been broken into. Thereupon, both defendant and Harris were searched and on defendant thirteen gasoline coupons were found secreted in his shoes; also, in his pockets were found quarters, dimes and nickels amounting to the sum of $16.20. In the lining of defendant's overcoat pocket the officers found ninety-four five gallon gasoline coupons. The person of Harris, who admittedly was with defendant during the course of the night, was also searched. Upon objection, the court did not permit the officers to state the result of their search of Harris.

When the officers took defendant to the alleged scene of the crap game, he made contradictory statements as to the exact location where the game took place. Upon the trial of defendant, Mr. Cox testified that his filling station had been entered and that gasoline coupons, small change and a glass bank containing a large amount of money had been stolen. He identified specifically two of the coupons found upon defendants as coupons given in the purchase of gas by C. R. Lawson and P. H. Gabriel. Both Lawson and Gabriel

corroborated Cox's statement as to the purchase of gas a short time prior to the offense charged.

Testifying as a witness, defendant accounted for his possession of the coupons and money as follows: He stated that about 12:30 o'clock a. m., he went to Fonticello Park and played craps upon the ground with seven men he was unable to identify; that he purchased the gasoline coupons from a man he did not know, who was to redeem them the next day when they met upon Broad street in the city of Richmond; that he secreted the coupons in his boots and coat lining because he knew it was illegal to possess them.

It would take a vivid imagination to arrive at the conclusion that the explanation of defendant was a satisfactory one.

There are numerous assignments of error relating to the admission and rejection of evidence. We have carefully considered these assignments and, in our opinion, they are without merit.

The last assignment of error relates to the action of the court in refusing to set aside the verdict of the jury on the ground that it was defective and insufficient.

It is conceded that the verdict is irregular and should have been amended. However, when we look to the record, it is apparent why the verdict was not put in proper form. The attorney for the Commonwealth, Mr. Maurice, upon the return of the verdict of the jury, propounded this question to counsel for the defendant: "Is there any objection to the form of the verdict?" Mr. Hall answered, "No objection to the form."

While it is true that counsel for an accused is not authorized to waive a constitutional right which the accused is entitled to assert, it is also true that the accused may by counsel waive a right which does not amount to a denial of justice and in no way invades his constitutional prerogatives. If any objection was contemplated by counsel as to the form of the verdict, it should have been made before the

reception of the verdict by the court and in response to the query of the attorney for the Commonwealth.

In our opinion the defendant has been accorded a fair trial and the evidence is conclusive of guilt; therefore, the judgment should be affirmed.

*Affirmed.*