## Staunton

RALPH CASTLE V. COMMONWEALTH OF VIRGINIA.

September 8, 1954.

Record No. 4276.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Quillen & Carter* and *Coleman & Coleman*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

Smith, J., delivered the opinion of the court.

The defendant, Ralph Castle, was jointly indicted with J. L. Christian for the larceny of "three hams of meat (pork), of the value of $45.00; three sides of pork or middlings of the value of $35.00, of the goods and chattels of one C. D. Fields," the son-in-law of Mr. and Mrs. T. B. Frazier, from whose smokehouse the meat was stolen. Upon his trial by a jury the defendant was found guilty of grand larceny as charged in the indictment and sentenced to two years in the penitentiary, to which judgment we granted this writ of error.

There are four assignments of error. The first and most vital is whether the evidence established beyond a reasonable doubt that the stolen meat was found in the exclusive possession of the defendant, thus raising the presumption that he was the thief. The other assignments deal with the refusal of the court to give certain instructions, and its failure to discharge the jury because of improper argument by the attorney for the Commonwealth.

A discussion of the first assignment of error requires a review of the evidence. The meat here involved was stolen on the night of March 23, 1952, from the smokehouse of Mr. and Mrs. T. B. Frazier who live five miles from Nickelsville and near Little Duck Road in Scott county, Virginia. The next day three Scott county officers found the meat in a house reputedly occupied by the defendant in the Warm Springs section of Scott county, about three miles south of Gate City, Virginia and a short distance from U. S. Route No. 23. Apparently the house is located near the Tennessee line and about twenty miles from the place of the theft. The meat was later identified as that stolen from the Frazier smokehouse.

Only two of three investigating officers testified and their descriptions of the house and its contents create uncertainty as to the nature of its occupancy; they disagreed as to whether the house contained two or three rooms, one or two beds and whether both doors of the house were open upon their arrival. They agreed, however, that the house was not enclosed by a fence, and was about forty feet from a well traveled highway and about 100 yards from the house occupied by the defendant's mother. The officers further testified that there was nothing in one of the rooms; some of the windows were broken; there was no wearing apparel found in the house; the house contained a stove, a table, chairs and cooking utensils in which meat had recently been fried, and that there were two or three quilts covering the stolen meat which was found on the table. No one was found in the house at the time of the investigation, but while the officers were there the defendant's wife and children came out of his mother's house. ·

The house had been serviced with electricity in the name of the defendant, but the records of the company showed that this service was discontinued on September 25, 1951.

The owner of the house, Mrs. Hattie Johnson, testified that it was occupied by the defendant when she inherited it in 1946 and that she had continued to rent it to him. She further stated that no rent had been paid on the premises since September, 1951; that although she went to collect the rent she had not seen the defendant there for over six months and when she last saw him he was at his mother's house. To a question whether there was any furniture in the house, she replied that somebody's was there but she did not know who owned it. She was further asked; "Did he [defendant] ever state to you that he was moving out, or had moved out"? She answered: "He went away and I never would see him. His mother, I would always see his mother, and he wouldn't be there, * * *."

There was undisputed testimony that the defendant and his wife were not living together, and that he had been

living with his mother for at least one or two months prior to the time of the larceny. One witness, Kelly Darnell, testified that in February, 1952, he went to the house in question and that it presented the appearance of being abandoned. On this occasion, Darnell found the defendant at the home of his mother.

On April 13, 1952, the day before the return of the indictment in this case, officer Bill J. Pendleton went to the house where he found and "picked up" a man named C. R. Bishop. The defendant was not there at that time but his wife was there making up the bed.

A sworn statement of J. L. Christian, now a fugitive from justice who lived about one mile from the house in which the stolen meat was found, was introduced in evidence. In this statement Christian admitted that he and his brother, now dead, stole the meat and stated that the defendant was not with them at the time of the theft. It also appears from this statement that the defendant and J. L. Christian left Kingsport, Tennessee soon after the theft and went to Cleveland, Ohio, at which place the defendant was apprehended. The defendant had to be extradited and he did not testify in his own behalf.

The Commonwealth sought to connect the accused with a strange car which was seen in the vicinity of the Frazier home on the evening of March 23, 1952, and described as an old gray or white 1941 Ford, with three or four people in it. This car was referred to in the sworn statement of J. L. Christian as owned by Marion Pleasant, who has also been indicted for the theft of the meat here involved, and as the car used to transport the stolen meat to the place where it was found. It had salt and grease in it similar to some found in the house and its tire treads were identified as similar to those found around the Frazier place and near the place where the meat was recovered. Mrs. Frazier testified that about 5:30 or 6:00 p. m. on March 23, 1952, she saw a strange light gray or tan old coupe with three or four persons in it pass her house but she did not recognize the oc-

cupants. She also testified that prior to the date of the theft she had seen the defendant in that community about twice a week and that on these occasions he visited a girl, the gate to whose home was approximately one hundred fifty feet from her house. Another witness, W. G. Winninger, testified that on a Sunday morning in the spring of 1952 he saw the defendant, Marion Pleasant and the two Christian boys in an old cream colored Ford, but he could not relate this to the time of the crime or say in what month of the spring he saw them.

The evidence obviously does not show directly and beyond a reasonable doubt that the defendant actually took the meat from the Frazier smokehouse or aided and abetted in the taking. Therefore in order to support the conviction the Commonwealth must rely on the presumption of fact, arising from possession of recently stolen property, that defendant was the thief. Hence we must inquire whether the evidence is sufficient to show beyond a reasonable doubt that the stolen meat was afterwards found in the exclusive possession of the defendant.

The rule laid down in *Price* v. *Commonwealth*, 21 Gratt. (62 Va.) 846, 869, is the law of Virginia applicable to this inquiry.

"If the property be stolen, and recently thereafter be found in the exclusive possession of the prisoner, then such possession of itself affords sufficient ground for a presumption of fact that he was the thief; and, in order to repel the presumption, makes it incumbent on him, on being called on for the purpose, to account for such possession consistently with his innocence. If he give a reasonable account of it, then it devolves on the Commonwealth to prove that such account is untrue. If he give an unreasonable account of it, then it devolves on the prisoner to sustain such account by other evidence." *Miller* v. *Commonwealth*, 185 Va. 17, 37 S. E. (2d) 864; *Kelly* v. *Commonwealth*, 181 Va. 576, 26 S. E. (2d) 63, *cert. denied*, 321 U. S. 767; *Hicks* v. *Commonwealth*, 157 Va. 939, 161 S. E. 919; *Stapleton* v. *Com-*

monwealth, 140 Va. 475, 124 S. E. 237; *Jolly* v. *Commonwealth*, 136 Va. 756, 118 S. E. 109; *Myers* v. *Commonwealth*, 132 Va. 746, 111 S. E. 463; *Branch* v. *Commonwealth*, 100 Va. 837, 41 S. E. 862; *Gravely* v. *Commonwealth*, 86 Va. 396, 10 S. E. 431. Cf. *Barnes* v. *Commonwealth*, 190 Va. 732, 58 S. E. (2d) 12. See also, 32 Am. Jur., Larceny, § 140, p. 1052; 23 Va. L. Rev. 616.

In *Tyler* v. *Commonwealth*, 120 Va. 868, 91 S. E. 171, the single question presented was whether there was sufficient evidence to sustain the burden of proof resting on the Commonwealth to prove that the alleged possession of stolen goods by the accused was an exclusive possession. In the course of its opinion the court quoted from 3 Greenleaf on Evidence, § 33, as follows:

" 'But to raise the presumption of guilt from the possession of the fruits of (or) the instruments of crime by the prisoner it is necessary that they be found in his *exclusive possession*. A constructive possession, like constructive notice or knowledge, though sufficient to create a civil liability, is not sufficient to hold the prisoner to a criminal charge. He can only be required to account for the possession of things which he actually and knowingly possessed, as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key. If they are found upon premises owned or occupied as well by others as himself, or in a place to which others had equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone.' " 120 Va., at page 871.

The possession of stolen property contemplated by the law is exclusive possession, though it may be joint. The Commonwealth must prove by the evidence, beyond all reasonable doubt, that the possession was exclusive; that it was personal; that it was recent and that it was unexplained. *Jolly* v. *Commonwealth, supra*; *Tyler* v. *Commonwealth, supra*; *Taliaferro* v. *Commonwealth*, 77 Va. 411.

The mere fact that stolen articles are found on the premises of a man of a family or in a place to which others have free access, without a showing of his actual conscious possession thereof, discloses no more than a *prima facie* constructive possession which alone is not sufficient to justify an inference of guilt. See *Munger* v. *Cox*, 146 Va. 574, 131 S. E. 841; *Sparks* v. *Commonwealth*, 136 Va. 683, 116 S. E. 236; 32 Am. Jur., Larceny, § 141, p. 1054.

The evidence before us discloses that several witnesses, including the investigating officers, testified that they had seen the defendant at the house in which the stolen meat was found; however, no witness testified that he was there at any time immediately prior to the time the meat was found therein; nor did any witness place him there or at his mother's home at a date later than the last of February or the first of March. There is also uncontradicted testimony that the defendant and his wife were separated and were living apart prior to the theft. In fact, the Commonwealth's evidence confirms this estrangement in that it shows he was courting another woman who lived very near the place of the theft.

Thus, the evidence shows no more than that the defendant had previously rented and lived in the house and had access to the premises. It does not show beyond a reasonable doubt that he had recently been there or that he had exclusive possession or control thereof. Suspicion alone is not sufficient to support a conviction of crime. It is well settled that the evidence, direct or circumstantial, must exclude every reasonable hypothesis other than that the accused is guilty. *Wright* v. *Commonwealth*, 196 Va. 132, 82 S. E. (2d) 603, and cases there cited. Certainly, the defendant's estranged wife and J. L. Christian, admittedly a participant in the theft who lived in the vicinity, among others, had access to the partially furnished and possibly abandoned house. It is clear that the Commonwealth failed to prove beyond a reasonable doubt that the stolen meat was

found in the exclusive possession of the defendant, and no presumption was raised that he had stolen it.

The defendant assigns as error the court's refusal to give Instruction D-3. In place of this instruction the court gave instruction D-3A, which is identical with the refused instruction except for the inclusion of the amendment shown below in italics. Instruction D-3A reads as follows: "The Court tells the jury that before the possession of stolen property in this case creates even a presumption that Ralph Castle is guilty, the Commonwealth must prove by the evidence, beyond all reasonable doubt, that the possession was personal; that it was exclusive; that it was recent; *that it was unexplained;* and that it involved a distinct and conscious assertion of property by the Defendant." (Italics supplied).

This instruction is almost identical with an instruction approved in *Jolly* v. *Commonwealth, supra,* and there is no good reason why the italicized language should have been deleted in this case. See 2 Lee, The Criminal Trial in the Virginias, § 1203, p. 795.

Error is also assigned to the court's refusal to give Instruction D-7, which reads as follows: "The court tells the jury that to raise the presumption of guilt from the possession of recently stolen goods by the prisoner, it is necessary that they be found in his personal and exclusive possession. A constructive possession on the part of the accused is not sufficient to raise such a presumption of guilt against him as to warrant a conviction."

After reiterating what had been said about exclusive possession in other instructions, this instruction told the jury that constructive possession is not sufficient to raise a presumption of guilt. While this is a correct statement of the law it is not complete because an additional statement is required as to what is meant by constructive possession. Also, as indicated, other instructions told the jury that it was necessary that the stolen goods be found in the personal and

exclusive possession of the accused. The refusal of Instruction D-7 was therefore not error.

The last assignment of error deals with the failure of the court to discharge the jury for improper argument by the attorney for the Commonwealth. We have examined the statements complained of and while we do not approve them in their entirety, they were not prejudicial to the defendant. See *Banovitch* v. *Commonwealth*, this day decided; *Jones* v. *Commonwealth*, 196 Va. 10, 82 S. E. (2d) 482, and cases there cited.

For the reasons stated the judgment is reversed and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*