COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Chafin
Argued at Chesapeake, Virginia


DE'ANTE LAVON JOHNSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1137-13-1                     JUDGE ROBERT J. HUMPHREYS
                                                        APRIL 29, 2014
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                         Wilford Taylor, Jr., Judge

          Charles E. Haden for appellant.

          Rosemary V. Bourne, Senior Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        De'ante Lavon Johnson ("Johnson") was convicted at a bench trial in the Circuit Court

for the City of Hampton ("trial court") of three counts of breaking and entering, in violation of

Code § 18.2-91, and three counts of grand larceny, in violation of Code § 18.2-95.  On appeal,

Johnson argues that the evidence was insufficient to prove that Johnson committed these

offenses.  Specifically, he argues that,

        The trial court erred in denying [his] motion to strike the three
        counts of breaking and entering and the three counts of grand
        larceny, where no evidence at all linked Johnson to the break-ins
        and thefts at 13 Golden Willow Circle or 55 Treasure Key, and the
        Commonwealth's evidence merely showed Johnson to be in
        possession of stolen property from 63 Michael's Woods Drive but
        did not establish that [he] participated in the break-in at 63
        Michael's Woods Drive or the carrying away of property from that
        address.

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. ANALYSIS

When the sufficiency of the evidence is challenged on appeal, this Court must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 923 (2008)). However, "[i]n order for inferences to amount to evidence they must be inferences based on facts that are proved, and not inferences based on other inferences." Smith v. Commonwealth, 185 Va. 800, 819, 40 S.E.2d 273, 282 (1946).

"The unexplained possession of recently stolen goods permits the fact finder to infer that the possessor is the thief." Archer v. Commonwealth, 26 Va. App. 1, 13, 492 S.E.2d 826, 832 (1997). In certain circumstances, the same inference can extend to proving a charge of breaking and entering. "The guilt of one breaking into a building may be established by circumstantial evidence. Direct testimony on the part of someone who saw him in the commission of the act or near the scene of the crime is not necessary, and it is unusual in cases of this character." Fout v. Commonwealth, 199 Va. 184, 189, 98 S.E.2d 817, 821 (1957).

> "[W]hen evidence has been introduced, which, if believed, establishes that a house has been broken and entered and goods stolen therefrom, and warrants an inference beyond a reasonable doubt that the breaking and entering and the larceny of the goods were committed at the same time, by the same person or persons, as a part of the same transaction, upon principle and authority, the

exclusive possession of the stolen goods shortly thereafter, unexplained or falsely denied, has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering as to an inference that he is guilty of the larceny."

Id. at 190-91, 98 S.E.2d at 822 (quoting Drinkard v. Commonwealth, 163 Va. 1074, 1083, 178 S.E. 25, 28 (1935)).

In order for the larceny inference to arise, "the possession must be exclusive, but 'one can be in exclusive possession of an item when he jointly possesses it with another,' as long as 'the accused was consciously asserting at least a possessory interest in the stolen property or was exercising dominion over [it].'" Archer, 26 Va. App. at 13, 492 S.E.2d at 832 (quoting Best v. Commonwealth, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981)); see also Montague v. Commonwealth, 40 Va. App. 430, 437, 579 S.E.2d 667, 670 (2003). To raise an inference of guilt from the possession of the fruits of crime by the defendant,

"it is necessary that they be found in his exclusive possession. A constructive possession . . . is not sufficient to hold the prisoner to a criminal charge. He can only be required to account for the possession of things which he actually and knowingly possessed, as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key. If they are found upon premises owned or occupied as well by others as himself, or in a place to which others had equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone."

Castle v. Commonwealth, 196 Va. 222, 227, 83 S.E.2d 360, 363 (1954) (quoting Tyler v. Commonwealth, 120 Va. 868, 871, 91 S.E. 171, 172 (1917)).

The mere fact that stolen articles are found on the premises of a man of a family or in a place to which others have free access, without a showing of his actual conscious possession thereof, discloses no more than a *prima facie* constructive possession which alone is not sufficient to justify an inference of guilt.

Id. at 228, 83 S.E.2d at 364. "[T]here must be evidence that the defendant exercised dominion and control over the property." Nelson v. Commonwealth, 12 Va. App. 268, 271, 403 S.E.2d

384, 386 (1991). "[M]ere proximity to a controlled item, such as a gun or narcotics, is not legally sufficient by itself to establish dominion and control." Myers v. Commonwealth, 43 Va. App. 113, 121, 596 S.E.2d 536, 540 (2004).

## A. 63 Michael's Woods Drive (Pronia Residence)

While Brittany Pronia ("Pronia") was out of town for thirteen days, someone broke into her house through the back door. The intruder wrote on the wall in the master bedroom, "where is the money and jewelry," and at the bottom of the stairs he wrote, "thank you." When Pronia returned home from her trip she reported the break in and missing property. Among other items missing were two personalized United States Navy commissioning rings. Three days later, police apprehended Johnson. At that time Johnson was wearing one of the rings and he admitted to possession of the other ring, which he lost while running from police. Thus, Johnson was found in possession of recently stolen property from the Pronia residence. See Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980) ("Four weeks is not, as a matter of law, so long a time that goods may not be considered recently stolen.").

The evidence supports a finding that the breaking and entering and the grand larceny from the Pronia residence occurred at the same time and that the same person or persons committed the offenses as part of the same transaction. The perpetrator broke into the house and was looking for jewelry, as evidenced by the writing on the wall. Johnson exclusively possessed the stolen rings from the Pronia residence shortly after the breaking and entering and the grand larceny from that residence. These facts give rise to a fair inference that Johnson committed these acts. While Johnson said that he bought the rings from an unknown subject at a bar, as the fact finder, the trial court was not obligated to accept his explanation as credible. Roberts v. Commonwealth, 230 Va. 264, 272, 337 S.E.2d 255, 260 (1985). Therefore, we do not disturb

- 4 -

Johnson's convictions for the breaking and entering and grand larceny related to the Pronia residence.

## B. 13 Golden Willow Circle (McMillian Residence) and 55 Treasure Key (Cherry Residence)

On September 12, 2012, Todd McMillian ("McMillian") returned to his home at 13 Golden Willow Circle to find the front door kicked in and the inside of his home destroyed. A neighbor reported seeing a young black male, possibly about 5'10" in height, and a black Toyota 4-Runner sport utility vehicle ("S.U.V.") in front of McMillian's home that morning. McMillian reported property missing from his home.[1]

On September 13, 2012, Jason Cherry ("Cherry") returned to his home at 55 Treasure Key to find his back door open and his house "ransacked" inside. Cherry's neighbor had noticed a dark green or black S.U.V. backed into Cherry's driveway that morning and she also noticed a gentleman in the S.U.V. "rocking side-to-side" in the backseat behind the passenger's seat. She wrote down the license plate number of the S.U.V. Among many other items missing from Cherry's home were a "Kimber .45," an "H&K USP .40 handgun," an "H&K P7 handgun," a "Raven .25," and a "Mossberg breeching shotgun."

Only one black male was seen at both of these residences. Some of the stolen property from the McMillian and Cherry residences was found a few days after the dates of the offenses in the back of a black Toyota 4-Runner, the S.U.V. used in both offenses. A video found in a camcorder in the back of the S.U.V. shows De'ante Johnson driving the vehicle, but Terrell Daniels and Marquan Johnson are also in the vehicle, and all three are young black males. There is no evidence as to when the video was taken. Marquan Johnson was driving the S.U.V. and was the sole occupant of the vehicle moments before an officer found the stolen property in the

---

[1] Johnson does not contest the sufficiency of the evidence to prove the value of the property stolen in any of the three grand larceny charges.

S.U.V. on September 17, 2012. On these facts, there is at most only a suspicion that De'ante Johnson, and not Marquan Johnson or Terrell Daniels, committed the offenses at the McMillian and Cherry residences. "Suspicion, however, no matter how strong, is insufficient to sustain a criminal conviction." Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981).

The Commonwealth argues that its case is stronger with regard to the Cherry residence at 55 Treasure Key because police found an H&K .40 handgun in the vicinity where Johnson was hiding from police just prior to his arrest on September 26, 2012—this was the same type of handgun taken from Cherry's home and the evidence supports that it was Cherry's handgun.

Pursuant to the investigation of and search for Johnson on September 26, Officer Steve Carpenter searched an alleyway where another officer had observed the two suspects, Johnson and a codefendant, hunched down. Officer Carpenter testified, "The area was checked and I was unable to locate the two subjects, but while I was back there I was just kicking around leaves and branches that were [lying] down and located two firearms." One firearm was an H&K .40 handgun. Officer Carpenter found the firearms behind the backyard of 112 Hickory Hill. Officer Carpenter also found Pronia's commissioning ring in the backyard of 113 Aspenwood Drive. Johnson was detained behind 112 Aspenwood Drive. The record fails to establish the distance between the location of the firearms and the location of the ring, or the distance between the location of the firearms and the location where police detained Johnson. Officer Carpenter only testified that he found the ring in the "general vicinity" after he found the firearms.

Johnson denied possession of the handgun. Johnson's unidentified codefendant, who also hid in the area where the handgun was found, denied knowledge and possession of the handgun as well. The handgun was found in the general area of a backyard apparently not owned by Johnson or his codefendant. Thus, the handgun was found in an area to which others had equal facility and right of access as Johnson. See Castle, 196 Va. at 227, 83 S.E.2d at 363.

There was no evidence that Johnson was consciously asserting a possessory interest in the stolen property or was exercising dominion over it—the evidence only establishes that the handgun was found in the general vicinity where Johnson lost the stolen ring and hid or ran from the police with his codefendant. Mere proximity to the handgun, even if it were clear that it existed in this case, is not enough to establish that Johnson exercised dominion and control over it. Myers, 43 Va. App. at 121, 596 S.E.2d at 540.

"'There must be an unbroken chain of circumstances proving the guilt of the accused to the exclusion of any other rational hypothesis and to a moral certainty.'" Id. at 123-24, 596 S.E.2d at 541 (quoting Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971)). In Gordon, the Supreme Court found that the Commonwealth failed to exclude all reasonable hypotheses of innocence where "a break in the chain" occurred because no witness testified to seeing Gordon dispose of the drugs that a detective found in a grass plot near a public street. Gordon, 212 Va. at 301, 183 S.E.2d at 737. "Because of the fatal gap in the circumstantial evidence adduced against Gordon," the Supreme Court reversed Gordon's conviction for possession of heroin. Id.

Here, no witness testified to seeing Johnson with the handgun or disposing of it; nor was there any DNA or fingerprint evidence linking Johnson to the handgun. Johnson was not in the immediate area of the handgun when it was found, and the evidence does not establish the distance between where Johnson was apprehended, the backyard of 112 Aspenwood Drive, and the location of the handgun, behind the backyard of 112 Hickory Hill. From this scant record a reasonable fact finder could not conclude beyond a reasonable doubt that Johnson exercised dominion and control over the handgun, as required to support a finding that he was in possession of recently stolen property and thus the burglar and thief. Therefore, we hold that the

evidence is insufficient to prove that Johnson committed the breaking and entering and grand larceny offenses at the McMillian and Cherry residences.

### C.  Revocation and Suspension of Previous Sentence

At Johnson's sentencing on the three breaking and entering convictions and the three grand larceny convictions, the trial court revoked the suspension of a sentence imposed on Johnson for prior offenses—five years suspended for a burglary and four years suspended on a theft of a firearm charge, both committed in 2009.  The trial court resuspended the nine-year sentence for a period of five years from the May 28, 2013 sentencing date.  Johnson argues that if his recent breaking and entering and grand larceny convictions are set aside on appeal, then there is "no basis" for concluding that he violated his probation condition that he obey all federal, state, and local laws, which appeared to be the sole ground for revoking his suspended sentences, and thus his probation violations should be reversed as well.

The Virginia Supreme Court has reversed a probation revocation judgment and remanded it to the trial court for reconsideration when "it cannot be determined from the record the extent to which the trial court's judgment revoking [the defendant's] probation and previously suspended sentence was based upon the [improper conviction]."  Milteer v. Commonwealth, 267 Va. 732, 741-42, 595 S.E.2d 275, 280-81 (2004).  Here, as in Milteer, the trial court did not specify which of Johnson's convictions were the bases of its probation revocation and resuspension judgment and therefore we remand for reconsideration of the probation violation as well.

### II.  CONCLUSION

We hold that Johnson's convictions for the breaking and entering and grand larceny related to the Pronia residence were supported by the evidence but that his four other convictions were improper for lack of sufficient evidence to support them.  Therefore, we reverse the

probation revocation judgment and remand to the trial court for reconsideration in view of this

Court's opinion.

<u>Affirmed in part;</u>
<u>reversed and dismissed in part;</u>
<u>and remanded in part.</u>