UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Athey and Chaney
Argued by videoconference


SHAWN WILLIAM WHITE

MEMORANDUM OPINION[*] BY
v.       Record No. 0918-21-1       JUDGE CLIFFORD L. ATHEY, JR.
                                    JULY 19, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
James C. Hawks, Judge

(Eric P. Korslund; Law Office of Eric Korslund, P.L.L.C., on brief),
for appellant. Appellant submitting on brief.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Shawn William White ("White") appeals his convictions in the Circuit Court of the City

of Norfolk ("trial court") for burglary, grand larceny, larceny of a firearm, conspiracy to commit

burglary, and credit card theft. On appeal, White contends that the evidence was insufficient to

prove that he was involved in the events giving rise to the convictions.

I. BACKGROUND

"On appeal, an appellate court is required to consider the evidence and all inferences fairly

deducible from it in the light most favorable to the Commonwealth, the prevailing party at trial."

*Lambert v. Commonwealth*, 298 Va. 510, 515 (2020). So viewed, the evidence reflects the

following:

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Around 6:30 a.m. on March 31, 2019, Jeremy Hitchcock ("Hitchcock") was awakened by the arrival of police officers who were investigating a report of a burglary at his home. Hitchcock identified some of his personal property which was lying in a neighbor's yard. He also discovered that his black 2016 Hyundai Sonata had been stolen and that the keys to the Hyundai and to his wife's van were both missing. Also missing were Hitchcock's wallet, his rifle and rifle case, a computer, and the contents of his lockbox. His wallet contained multiple credit cards, and the lockbox held social security cards and his marriage license. As a result, Hitchcock notified Hyundai Blue Link, a service that monitored the location of his car via GPS, that his black 2016 Hyundai Sonata had been stolen.

As Hitchcock was being interviewed by the police, he received alerts on his phone concerning several attempts to use his credit cards, including one attempt at a nearby Walmart. Hitchcock informed the police of the credit card alerts. Shortly thereafter, Officer K. Ferree ("Ferree") received a report that a car was being "tampered with" a couple of blocks from Hitchcock's home and that the offense was "in progress." When Ferree investigated the report at a residence on Belgrave Avenue, he found a vehicle with a broken window outside of the residence. Ferree also noticed a red Ford truck parked nearby, which subsequently proved to have been stolen. The owner of the vehicle with the broken window showed Ferree footage from his home security camera which depicted the red Ford truck and a black car arriving together outside the victim's residence. The video also showed the black car bumping into the red truck, the two men trying to break into a car, and both men subsequently fleeing in the black car. Investigator Todd ("Todd") testified that the black car depicted in the video was Hitchcock's car and that it collided with the red Ford truck on Belgrave Avenue.

Meanwhile, Hitchcock's GPS system placed his black Hyundai Sonata at a Walmart two and a half miles from the Belgrave Avenue residence. Officer C. Hudson ("Hudson")

subsequently arrived at the Walmart around 8:16 a.m. and located the car in the Walmart parking lot with its engine still running. When Todd met Hudson at the Walmart at approximately 9:42 a.m., Todd searched the car and found credit cards bearing Hitchcock's name in the driver's door as well as a black wallet and other items belonging to Hitchcock.

After directing Hudson to impound the car, Todd entered the Walmart and reviewed surveillance footage with the store's loss prevention officer. The footage depicted Hitchcock's black Sonata arriving at the store at approximately 6:26 a.m. Two men exited the vehicle and entered Walmart at approximately 6:32 a.m. Todd recognized the driver of the black car as Robert Cahill ("Cahill"). Cahill put on a dark hooded sweatshirt as he entered the store. The other male, who was getting out of the front passenger seat, was wearing a gray or white baseball cap with a red brim. The men later exited the store, but entered the Walmart a second time at 7:33 a.m.

The footage showed that Cahill and his male companion in the red-brimmed hat purchased merchandise at separate registers using multiple credit cards, some of which Hitchcock later identified from the video images as resembling his stolen cards.[1] The footage also depicted his male companion holding a car key fob that Hitchcock identified as the fob for his stolen car. Receipts generated from the Walmart register that Cahill's companion used reflected a variety of completed and declined credit card transactions from four different credit cards between 7:36 a.m. and 7:46 a.m. Todd testified that the credit card information on the receipts matched some of the credit cards stolen from Hitchcock's home. Hitchcock later identified the black vehicle as his stolen Hyundai Sonata. Cahill and his male companion exited the store a final time at 8:22 a.m.

---

[1] White acknowledges on appeal that "the passenger from the Hyundai appeared to be the same person using Hitchcock's credit cards and passed them off to the other individual that was in the car."

- 3 -

Todd texted screenshots of the footage of Cahill and his male companion to Detective Gross ("Gross"), and Gross identified Cahill's companion as appellant, Shawn White. Gross testified that he was familiar with Cahill and White from other investigations and social media. Gross also noted that they were frequent companions and that Gross had interacted with White "in person." Gross stressed that he was "one hundred percent confident" that the man in the Walmart images was White, testifying that White's street name was "Foley."

The trial court found that the image sent to Gross was an image from the Walmart footage and concluded that Gross's identification of White was reliable. Further, the trial court concluded that the evidence demonstrated "collaboration" between White and Cahill, reflected by the presence of the firearm in the truck and the video footage depicting them "passing off . . . multiple credit cards" between each other at Walmart. Accordingly, the trial court found White guilty on all the charges. This appeal followed.

## II. ANALYSIS

White contends that there was insufficient evidence to support his convictions. He argues that he was not involved in the Hitchcock home invasion and that none of the evidence introduced at trial justified the trier of fact in concluding beyond a reasonable doubt that he was a part of the Hitchcock burglary. We disagree because the identification by Detective Gross was reliable, permitting the larceny inference which sufficiently supports the convictions.

Under Code § 18.2-91, the crime of burglary includes breaking and entering at night with the specific intent to commit larceny. Code § 18.2-22 prohibits "conspire[ing], confederat[ing][,] or combin[ing] with another" to commit any felony. Code § 18.2-95 criminalizes grand larceny, which includes both larceny of a firearm and larceny of "goods and chattels" at or over a threshold amount. Under Code § 18.2-192, various activities relating to stolen credit cards—including both the theft of credit cards and receipt of stolen credit cards—are forbidden.

- 4 -

The trier of fact is required "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brown v. Commonwealth*, 68 Va. App. 44, 55 (2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A judgment can be overturned for insufficient evidence only if it was "plainly wrong or without evidence to support it." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). There was sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496-97 (2015)). Our deference to the trial court's factual findings extends to its interpretation of video evidence. *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

"[W]here the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *Moral v. Commonwealth*, 4 Va. App. 310, 314 (1987) (quoting *Inge v. Commonwealth*, 217 Va. 360, 366 (1976)). Nonetheless, even if "some evidence . . . support[s] the appellant's hypothesis of innocence," we must affirm if any "reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (third, fourth, and fifth alterations in original) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

The trier of fact could infer that White stole personal property from Hitchcock's home if he was found in "exclusive possession of [the] *recently* stolen property" from the home and cannot adequately explain how he obtained it. *Winston v. Commonwealth*, 26 Va. App. 746, 757 (1998) (citing *Bright v. Commonwealth*, 4 Va. App. 248, 251 (1987); *Castle v. Commonwealth*,

196 Va. 222, 226-27 (1954); *Best v. Commonwealth*, 222 Va. 387, 389 (1981)). Where a variety of things are stolen at one time, the trier of fact may infer that it was stolen by the same person or persons. *Henderson v. Commonwealth*, 215 Va. 811, 813 (1975).[2]

The inference also applies to burglary. *Fout v. Commonwealth*, 199 Va. 184, 193-94 (1957). As the Supreme Court of Virginia has said:

> The Commonwealth can establish a prima facie case that a defendant broke and entered by (1) proving that goods have been stolen from a house into which someone has broken and entered; (2) justifying the inference that both offenses were committed at the same time, by the same person, as a part of a criminal enterprise; and (3) proving that these goods were found soon thereafter in the possession of the defendant.

*Finney v. Commonwealth*, 277 Va. 83, 90 (2009) (citing *Guynn v. Commonwealth*, 220 Va. 478, 480 (1979)).

Here, since we conclude below that White was reliably identified as the individual who accompanied Cahill into the Walmart, the larceny inference justified the trial court in convicting White on all charges. White and Cahill were clearly in possession of stolen credit cards and a stolen car when they were identified from the security footage at Walmart. In fact, at closing, White's attorney conceded that if the person in the footage was actually White, then White was clearly guilty of credit card theft. Since the car, credit cards, and other personal property were all stolen from Hitchcock's home during a single incident, it was reasonable for the trier of fact to infer that White was involved in the theft of the rifle as well, which also means that White

---

[2] We applied this same principle more recently in an unpublished decision. *Wyatt v. Commonwealth*, No. 1409-13-3 (Va. Ct. App. Jan. 13, 2015).

participated in the burglary that was necessary[3] to effectuate the larceny of other property stolen from inside Hitchcock's home.[4]

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). The factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), are used to determine "whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt" the identity of the perpetrator. *Brown v. Commonwealth*, 37 Va. App. 507, 522 (2002).

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200.

Here, Detective Gross was presented with an image of Cahill's companion at Walmart within hours of the Hitchcock burglary. Gross testified that he knew both Cahill and White. He also identified them as frequent companions and stressed that he was "one hundred percent confident" that the Walmart image was appellant.[5] *See Bowman v. Commonwealth*, 30 Va. App. 298, 303 (1999) (witness's identification of perpetrator in "videotape" and "still photos" properly

---

[3] Here, there was adequate evidence to show that the property stolen from Hitchcock's home could have been stolen only through a burglary.

[4] We also uphold the conviction for conspiracy to commit burglary. White's argument on appeal depends entirely on tying him to the crimes in question, not the sufficiency of the evidence to show that he conspired with Cahill to commit the crimes.

[5] Contrary to appellant's assertion, the trial court never characterized the images of appellant extracted from the Walmart video as "hard to make out." Instead, the trial court's comment referred to the quality of the Belgrave Avenue video.

before fact finder).  White also argues that the evidence did not show that the pictures Gross used to initially identify him were from the Walmart security video, but the court found there was "virtually no chance of error as to which photographs we're talking about."

Further, Detective Gross's identification was corroborated by other evidence.  *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019).  The trier of fact was also able to compare the video footage and still images of Cahill's companion to White, who was present at trial, and weigh its own observations in confirming whether the individual depicted in the footage was White.  The footage and still images thus served to corroborate Gross's identification of White as the perpetrator.

### III. CONCLUSION

Because we find the evidence sufficient to prove that White was involved in each of the alleged crimes, we affirm the trial court.

*Affirmed.*